**William B. RICHARDSON, on behalf of himself and others similarly situated, Plaintiff,**

v.

**David M. KENNEDY, Secretary of the Treasury, United States Government, Defendant.**

Civ. A. No. 69–153.

United States District Court,
W. D. Pennsylvania.

June 15, 1970.

William B. Richardson, pro se.

Thomas A. Daley, Asst. U. S. Atty., Pittsburgh, Pa., for defendant.

Before ALDISERT, Circuit Judge, MARSH, Chief District Judge, and MILLER, District Judge.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

Before us is the government's motion to dismiss plaintiff's complaint attacking the Congressional pay raise effected by the "Postal Revenue and Federal Salary Act of 1967," [1] and seeking both declaratory and injunctive relief. A preliminary phase of this case has already been before the Court of Appeals which dismissed an appeal from an interlocutory decree denying a request for a temporary restraining order. Richardson v. Kennedy, 418 F.2d 235 (3 Cir. 1969). This three-judge district court has been properly convened under the provisions of 28 U.S.C. §§ 2282 and 2284.

Suing as a taxpayer and citizen, plaintiff contends that the provisions of the Act which set forth a procedure to establish new rates of Congressional compensation represent an unconstitutional

1. 2 U.S.C. §§ 351–361.

delegation of power. This procedure provides for the establishment of a commission to review salaries of Congressmen and other government officials, and to report its findings to the President. The President is then authorized to submit his recommendations for salaries to the Congress, and these recommendations shall become effective unless Congress chooses to alter or modify them.[2] Plaintiff insists that this procedure is inconsistent with the mandate of Article I, § 6, clause 1, providing that "Senators and Representatives shall receive a Compensation for their Services, to be ascertained by Law, and paid out of the Treasury of the United States." He argues that "ascertained by Law" means that Congress must, in the first instance, pass specific legislation establishing the changes in salary, and that only then may the President officially influence the legislation by exercising, or declining to exercise, his veto power pursuant to Article I, § 7, clause 2.[3]

Although by brief and argument the government evidenced a willingness to meet the merits of plaintiff's contention, it nevertheless interposed an initial objection to plaintiff's standing to maintain the action. Because the interest sought to be protected here is solely that of a taxpayer and citizen, we are met with the problems of this "complicated specialty of federal jurisdiction" [4] most recently discussed by the Supreme Court in Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

Until the Flast case, Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L. Ed. 1078 (1923) stood as an apparent constitutional bar to the maintenance of taxpayer actions. Together with the companion case of Massachusetts v. Mel-

lon, Mrs. Frothingham attacked the federal Maternity Act of 1921 principally as "a usurption of power not granted to Congress by the Constitution—an attempted exercise of the power of local self-government reserved to the states by the Tenth Amendment" and as a taking of property "under the guise of taxation, without due process of law" in violation of the fifth amendment. Both cases were "disposed of for want of jurisdiction." *Id.* at 480, 43 S.Ct. at 598.

The Court described Mrs. Frothingham's challenge to the statute as "essentially a matter of public and not of individual concern. If one taxpayer may champion and litigate such a cause, then every other taxpayer may do the same, not only in respect to the statute here under review, but also in respect of every other appropriation act and statute whose administration requires the outlay of public money, and whose validity may be questioned." *Id.* at 487, 43 S.Ct. at 601. It also reinforced the doctrine of separation of powers among the legislative, executive, and judicial branches of government by emphasizing that the courts have no inherent power to review and annul the acts of Congress on the ground that they are unconstitutional:

> That question may be considered only when the justification for some direct injury suffered or threatened, presenting a justiciable issue, is made to rest upon such an act. Then the power exercised is that of ascertaining and declaring the law applicable to the controversy. * * * The party who invokes the power must be able to show, not only that the statute is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its

---

2. The new salaries became effective on February 14, 1969, following the filing of this action.

3. Plaintiff also invokes Article I § 8, clause 1 which states: "The Congress shall have power to lay and collect Taxes * * *, to pay the Debts and provide for the common Defence and general Welfare .

* * *." In addition, he cites Article VI, clause 3, requiring that officers of the government "shall be bound by Oath or Affirmation to support this Constitution."

4. United States ex rel. Chapman v. FPC, 345 U.S. 153, 156, 73 S.Ct. 609, 97 L.Ed. 918 (1953).

enforcement, and not merely that he suffers in some indefinite way in common with people generally.

*Id.* at 488,[5] 43 S.Ct. at 601.

Although standing has been a source of continuing confusion in the federal courts—the principles being predictably easier to announce than to apply, even for "the expert feel of lawyers" [6]— discernable throughout the cases is the basic proposition that the plaintiff must demonstrate the existence or threat of injury to himself. Thus in Doremus v. Board of Educ., 342 U.S. 429, 434, 72 S. Ct. 394, 96 L.Ed. 475 (1952), plaintiff had no standing as a taxpayer to attack the constitutionality of Bible reading in public schools, for the suit challenged no state expenditure, and hence was not "a good-faith pocketbook action" but an attempt to litigate "a religious difference." In School District of Abington Township v. Schempp, 374 U.S. 203, 224, 83 S.Ct. 1560, 1572, 10 L.Ed.2d 844 n.2 (1963), however, the Court found it sufficient to observe in footnote that the parties were "school children and their parents, who are directly affected by the laws and practices [school prayers] against which their complaints are directed. These interests surely suffice to give the parties standing to complain."

Perhaps the most concise and incisive inquiry into the general question of standing was posed by Mr. Justice Brennan in Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962): "Have the appellants alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions?"

Not until its decision in Flast v. Cohen, however, did the Supreme Court design a formula to test the presence of the personal stake and interest necessary to confer standing in a federal taxpayer suit. Appellants alleged that expenditures made by HEW pursuant to the Elementary and Secondary Education Act of 1965 "were used to finance the furnishing of instructors and the providing of instructional materials for use in religious and sectarian schools" in contravention of the Establishment and Free Exercise Clauses. The Court stated:

The nexus demanded of federal taxpayers has two aspects to it. First, the taxpayer must establish a logical link between that status and the type of legislative enactment attacked. Thus, a taxpayer will be a proper party to allege the unconstitutionality only of exercises of congressional power under the taxing and spending clause of Art. I, § 8, of the Constitution. * * * Secondly, the taxpayer must establish a nexus between that status and the precise nature of the constitutional infringement alleged. Under this requirement, the taxpayer must show that the challenged enactment exceeds specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by Art. I, § 8. When both nexuses are established, the litigant will have shown a taxpayer's stake in the outcome of the controversy and will be a proper and appropriate party

---

5. A decade earlier, in Muskrat v. United States, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911), the Court had stated that the right to declare a law unconstitutional is the

> most important and delicate duty of this court, [and] is not given to it as a body with revisory power over the action of Congress, but because the rights of the litigants in justiciable controversies require the court to choose between the fundamental law and a law purporting to be enacted within constitutional authority, but in fact beyond the power delegated to the legislative branch of the government.

6. Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 150, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). See Note, "The Insular Status of the Religion Clauses: The Dilemma of Standing," 36 Geo.Wash.L. Rev. 648 (1969).

to invoke a federal court's jurisdiction.

392 U.S. at 102–103, 88 S.Ct. at 1954.

Emphasizing that the "Establishment Clause was designed as a specific bulwark against * * * potential abuses of governmental power, and [that the clause] * * * operates as a specific constitutional limitation upon the exercise by Congress of the taxing and spending power conferred by Art. I, § 8," *id.* at 104, 88 S.Ct. at 1954, the Court found that the taxpayer had the proper standing. It distinguished *Frothingham* on the ground that the taxpayer there established the first nexus, but in failing to show that Congress had breached a specific limitation upon its taxing and spending power, did not meet the second test.

It is precisely on the *Flast* theory that plaintiff pegs his argument. He contends that the authority for *all* federal spending emanates from the taxing and spending clause of Article I, § 8 and, since the payment of Congressional salaries, which he challenges, involves a federal expenditure, he insists that the first nexus is satisfied. Arguing further that the provision in Article I, § 6, clause 1 for Congressmen to "receive a Compensation for their Services, to be ascertained by law" is a specific constitutional limitation on the exercise of the taxing and spending power, plaintiff urges that he has met the qualifications of the second nexus.

Plaintiff's contention that all Congressional taxing and spending power derives from Article I, § 8 clause is not a frivolous one. It has been said that "[s]ince the foundation of the nation, sharp differences of opinion have persisted as to the true interpretation" of the clause:[7] it was Madison's view that the phrase, "to lay and collect Taxes * * * to pay the Debts and provide for the common Defence and general Welfare," amounted to no more than a reference to the other enumerated powers;

Hamilton believed that the clause conferred a power separate and apart from those elsewhere enumerated.

Whatever have been the relative merits of this debate, the dispute is now academic and his been so for a third of a century. In United States v. Butler, 297 U.S. 1, 56 S.Ct. 312 (1936), the Court found it necessary "to decide which [was] the true construction" and cast its lot with the Hamiltonian position:

> Mr. Justice Story, in his Commentaries, espouses the Hamiltonian position. We shall not review the writings of public men and commentators or discuss the legislative practice. Study of all these leads us to conclude that the reading advocated by Mr. Justice Story is the correct one.

*Id.* at 66, 56 S.Ct. at 319.

In announcing "the adoption of the broader construction" the Court did more than settle an abstract question of constitutional law. Implicit in its decision that the taxing and spending clause conferred a power separate and distinct from other enumerated Congressional powers was a recognition that Congress need not draw authority from this clause if another constitutional provision confers the power to spend for a specific purpose. Consistent with this interpretation, the Tenth Circuit in Velvel v. Nixon, 415 F.2d 236 (10 Cir. 1969), denied a taxpayer standing to challenge Vietnam War expenditures. Rejecting a contention that the plaintiff had standing under *Flast*, the court held that the first nexus was not established because the Congressional expenditures for the war were not authorized by the taxing and spending clause but were pursuant to the Congressional power "to raise and support Armies" and "to provide and maintain a Navy," Article I, § 8, clauses 12 & 13.

It is the government's position here, and we agree, that the constitutional authority for the payment of Congressional salaries does not stem from

7. United States v. Butler, 297 U.S. 1, 65, 56 S.Ct. 312, 319, 80 L.Ed. 477 (1936).

the taxing and spending power of Article I, § 8, but from Article I, § 6, clause 1 which commands that they receive a compensation "to be ascertained by Law, and paid from the Treasury of the United States." We accept the government's view because we construe such authority to be completely independent of the taxing and spending clause. We hold that Congressmen would have a constitutional right to compensation under Art. I, § 6 even if Art. I, § 8, clause 1 had never been adopted. In rejecting plaintiff's basic premise that Article I, § 8 is the source of all Congressional spending power, we do not deem it necessary to repeat what was set forth in detail by the Supreme Court in *Butler*. It is sufficient to note that that case ended the philosophical polemics on this subject and refused the view now being strenuously advanced by plaintiff. Having failed "to allege the unconstitutionality only of exercises of congressional power under the taxing and spending clause," Flast v. Cohen, *supra*, 392 U.S. at 102, 88 S.Ct. at 1954, plaintiff has not established the first nexus.

In addition, the government suggests that plaintiff has also failed to satisfy the second nexus, for his reliance on Article I, § 6 as one of the "constitutional provisions which operate[s] to restrict the exercise of the taxing and spending power" is misplaced. Flast v. Cohen, *supra*, 392 U.S. at 106, 88 S.Ct. at 1955. It is certainly true that the Court in *Flast* declined to speculate "[w]hether the Constitution contains other specific limitations," in addition to the Establishment Clause, and expressly left this to be "determined only in the context of future cases." *Id*. at 105, 88 S.Ct. at 1955. And it is perhaps significant that

both Mr. Justice Fortas and Mr. Justice Stewart believed the holding was—or should be—limited to the proposition that a taxpayer has standing "to assert that a specific expenditure * * * violates the Establishment Clause of the First Amendment." *Id*. at 114, 88 S.Ct. at 1960 (Stewart, J., concurring).[8]

We agree that whatever illumination and expansion *Flast* receives, Article I, § 6 will not qualify as a Constitutional provision restricting the taxing and spending power and thus serving as a basis for standing. Assuredly, this provision—unlike the Establishment Clause —does not secure fundamental rights in which all taxpayers and citizens have an equal, direct, and personal stake.[9]

Accordingly, were we to assume that plaintiff established the· first nexus for standing, we would still be constrained to hold that Article I, § 6 is not a provision which would satisfy the second nexus of *Flast*.

Plaintiff, William B. Richardson, does not possess the necessary personal stake in the outcome of this controversy and therefore lacks standing to maintain this action.[10]

## ORDER OF COURT

And now this 15th day of June, 1970, upon consideration of the foregoing motion, after hearing held thereon, and for the reasons set forth in the foregoing opinion, it is ordered that the complaint in the action styled "William B. Richardson, on behalf of himself and others similarly situated v. David M. Kennedy, Secretary of the Treasury, United States Government, Civil Action No. 69–153" be and the same is hereby dismissed with prejudice.

---

8. See Wright, Law of Federal Courts, 41.

9. See Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970) reiterating the necessity of a "personal stake and interest."

10. *Accord*: Callaway v. Mitchell, No. 50,-909; D.C.N.D.Cal.1969; Hort v. Kennedy, Civil No. CIV–69–238, D.C.W.D. Okla.1969.