**Larry PRESSLER, Member, United States House of Representatives, Plaintiff,**

v.

**William E. SIMON, Secretary of the Treasury, et al., Defendants.**

Civ. A. No. 76–782.

United States District Court, District of Columbia.

Oct. 12, 1976.

Larry Pressler, Member of Congress, pro se, J. Dapray Muir, Washington, D. C., for plaintiff.

Nathan M. Norton, Dept. of Justice, Washington, D. C., for defendant William E. Simon.

Cornelius B. Kennedy, Washington, D. C., for defendant Francis R. Valeo.

Eugene Gressman, Washington, D. C., for defendant Kenneth R. Harding.

Before TAMM, Circuit Judge, and GESELL and FLANNERY, District Judges.

## MEMORANDUM OPINION AND ORDER

### PER CURIAM.

This action seeks a judgment declaring that those sections of the Postal Revenue and Salary Act of 1967, 2 U.S.C. §§ 351 *et seq.* ("Salary Act") and the Executive Salary Cost-of-Living Adjustment Act of 1975, 2 U.S.C. § 31 ("Adjustment Act"), which provide procedures to set new rates of compensation for members of Congress are unconstitutional, and to enjoin increased disbursements to members of Congress under the Acts. Plaintiff, The Honorable Larry Pressler, is a member of the United States House of Representatives from the First Congressional District of South Dakota, first elected in November, 1974.

The issues come before this Court on cross-motions for summary judgment, and defendants' motions to dismiss.[1] Argument was heard by this three-judge district court pursuant to 28 U.S.C. § 2284.

The Salary Act established a Commission on Executive, Legislative and Judicial Salaries ("the Commission"). At four-year intervals the Commission must recommend to the President pay rates for Senators, Representatives, Federal Judges and certain officials in the Legislative, Judicial and Executive branches of Government. After receiving the Commission report, the President is required to submit in the next budget message his recommendations as to the exact pay rate for those positions covered by the Salary Act. The pay rates thus recommended by the President for the different positions, including members of Congress, become effective 30 days after the budget is submitted to Congress unless other rates have been enacted by law, or one House of Congress specifically disapproves all or part of the recommendations.

The Adjustment Act provides for automatic cost-of-living adjustments in the salaries of members of Congress and other Executive, Judicial and Legislative officials. It provides in § 204(a) that congressional salaries determined by the Salary Act procedures will be automatically increased by an amount equal to the present increase being made by the President in the rates of pay of federal employees covered by the General Schedule as provided in 5 U.S.C. § 5305.

These two interrelated statutes represent a major break with tradition. For the almost 180 years since the ratification of the Constitution, the precise compensation of members of Congress was always fixed from time to time by specific legislation without any legislative involvement by the President.

The first recommendations by the Commission under the Salary Act were made in December, 1968. The President's subse-

---

1. The Honorable James M. Jeffords, Member At Large of the United States House of Repre- sentatives from Vermont, filed a brief *amicus* in support of plaintiff's position.

quent recommendations took effect in February, 1969, without any action by the Congress, and congressional salaries were increased from $30,000 to $42,500 per annum. Mr. Pressler was not yet a member of the House. In February, 1974, after Mr. Pressler took office, the President's salary recommendations following the second Commission report were submitted to Congress. The Senate, by resolution, rejected all pay increases. The next Commission is expected to report to the President by January, 1977.

In October, 1975, Executive Order 11883, 40 F.R. 47091, increased General Schedule salaries and accordingly congressional salaries covered by the Adjustment Act were automatically increased from $42,500 to $44,600 per annum. In September, 1976, Congress refused another automatic pay increase in congressional salaries under the Adjustment Act by refusing to appropriate necessary funds in the Legislative Appropriations Act for 1977.

Congressman Pressler claims that the Salary Act and the Adjustment Act, whose operation has just been reviewed, violate Article I, Section 1, of the Constitution, and, more importantly, Article I, Section 6, of the Constitution, which states in pertinent part:

> The Senators and Representatives shall receive a Compensation for their Services to be ascertained by Law, . . . . .

He claims that the payment of congressional salaries by defendants pursuant to the statutes in question injure him as a member of the House of Representatives by depriving him of his constitutional duty to vote on each ascertainment of congressional salaries.

## I. *Standing*

■ It is initially argued that Congressman Pressler has no case or controversy with the defendants and, thereby, lacks standing to assert his claims. He sues as a citizen, a taxpayer, and a Congressman. It is only in this latter capacity that he can be heard, if at all. *Richardson v. Kennedy*, 313 F.Supp. 1282 (W.D.Pa.1970), *aff'd*, 401 U.S. 901, 91 S.Ct. 868, 27 L.Ed.2d 800 (1971).

■ A Congressman has standing to sue by reason of his office where Executive action has impaired the efficacy of his vote, *Kennedy v. Sampson*, 167 U.S.App.D.C. 192, 511 F.2d 430, 436 (1974); *cf. Coleman v. Miller*, 307 U.S. 433, 59 S.Ct. 972, 83 L.Ed. 1385 (1939), or certain other congressional duties. *Mitchell v. Laird*, 159 U.S.App.D.C. 344, 488 F.2d 611 (1973). The resulting injury under such circumstances is said to create a personal stake in the outcome sufficient to assure that a suit by a Congressman affected would be in a proper adversary context. *Kennedy v. Sampson, supra* ; *see Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Congressman Pressler alleges not that the efficacy of his legislative vote was impaired by the Executive, but rather that his vote was impaired by the failure of other members of Congress to assume an affirmative responsibility specifically placed on them by language of the Constitution. While it is clear that legislators have no special right to invoke court consideration of the validity of a statute passed over an objecting vote, *Korioth v. Briscoe*, 523 F.2d 1271 (5th Cir. 1975), where, as here, a member of Congress alleges he is prevented from voting to perform a specific legislative duty expressly mandated by the Constitution, the suit may be cognizable by the courts so long as there is no attempt being made to interfere with the internal workings of the Congress itself.[2]

■ Mr. Pressler's suit meets this requirement, but he must also show that *he* has been, or will be, injured before standing is recognized. *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Plaintiff's theory of injury is somewhat unclear, but sufficient facts have been alleged at this stage to support his claim of injury

---

**2.** If there were such an interference this case might present a political question, as was argued by defendants. But where statutes enacted by Congress are questioned under a specific constitutional clause, the political question doctrine should not be applied by the courts merely because a decision might have political consequences.

in fact. Under the Salary Act and the Adjustment Act the status quo as to congressional salaries may be altered without affirmative action by both Houses of Congress. While salaries may be changed in the traditional fashion, the availability of the procedures created by the statutes under attack make the vote of any single affected Congressman somewhat less efficacious.

In 1969, congressional salaries were raised by the new process for the first time. But Mr. Pressler was not yet a member of Congress and cannot claim his vote was impaired. In 1975, a proposed salary increase was vetoed by a Senate Resolution. The status quo was unaltered and we can see no injury to Mr. Pressler, though he was then a Congressman. While the next Commission should report to the President shortly, any injury from this action is far too speculative to support standing.

However, in October, 1975, congressional salaries, including Mr. Pressler's, were raised under the Adjustment Act. This change was effected without action by the House and Senate. This circumvention of the traditional legislative process impaired the efficacy of Mr. Pressler's vote. He has, therefore, standing to challenge the Adjustment Act. But that Act increases, on a percentage basis, the compensation as determined by Salary Act procedures. For this reason, Congressman Pressler has standing to challenge both pieces of legislation. Accordingly, standing will be afforded under the unique circumstances of this particular case.

## II. *Ascertainment Clause*

■ Turning to the merits, the Court is asked to interpret the meaning and effect of the ascertainment clause in Article I, Section 6, of the Constitution. This is a matter of first impression.

Plaintiff contends that the phrase "to be ascertained by Law" constitutes an explicit mandatory requirement that whenever the compensation of members of Congress is redetermined it must be fixed at that time by a law that specifically states the amount to be paid and that the proposal, like any law, should then be open for debate and vote by the members of each House. Plaintiff urges, in short, that Congress is required itself to fix its pay and that that responsibility in this regard cannot, in effect, be delegated or by-passed in the fashion provided by the Salary Act and the Adjustment Act which allows periodic pay increases to take effect without affirmative congressional action.

For the reason set forth below, it appears to the Court that plaintiff's grievance is directed to what is essentially a matter of form rather than substance, and that Congress has established its compensation "by law" within the requirements of Article I, Section 6, when that section is read, as it must be, against accepted principles governing interpretation of the Constitution as a whole.

At the outset it should be noted that when Congress passed the Acts governing its compensation it acted "by law," as plaintiff himself concedes. The suggestion is, though, that the ascertainment is by others, not by the Congress. However, not only does the Commission which recommends pay levels contain members representing each House of Congress, but even in this circumstance the delegation is not absolute. When the President submits recommendations either House, acting alone, can by negative vote prevent the recommendations from taking effect. And Congress has not stopped here. In the Salary Act it has explicitly reserved the right to enact legislation fixing congressional compensation regardless of what recommendation it receives from the President. As already noted, it also retains this right under the Adjustment Act by the use of its appropriation powers. Congress, by law, recently rejected an Adjustment Act pay increase by asserting its continued authority always to fix its own pay.

Thus, it only remains to consider whether or not the verb "ascertain" has such a narrow and limiting effect that, as a matter of constitutional law, it was intended to prevent the Congress from developing rational

procedures of this type for fixing congressional compensation by means other than enacting a specific statute fixing each pay change. Unfortunately no light is thrown on this subject by *The Federalist Papers* or the constitutional debates. As plaintiff's own research shows, there was much discussion of whether the states or the Congress itself should establish the level of congressional compensation. Various formulas were suggested, including fixing the amount in the Constitution itself, having it fluctuate depending on the average market value of a bushel of wheat, or determined by a special jury panel. None of this discussion, however, throws any significant light on the meaning of the word "ascertain." The most these historical sources reflect is that the Founding Fathers felt that the Congress should have ultimate responsibility for determining by law what the compensation of its own members should be, as opposed to the suggestion that this final responsibility be delegated to others. It was the eventually accepted view that if Congress acted irresponsibly in setting salaries, members would be held responsible by the voters. Congress has retained this ultimate responsibility and indeed has asserted it on more than one occasion.

Congress continues to be responsible to the public for the level of pay its members receive. There is no concealment; indeed publication of the suggested rate of pay occurs in advance of the pay level taking effect. Moreover, with the growing complexity of all governmental functions a reasonable effort to coordinate congressional pay with pay in the Executive and Judicial branches was certainly not intended to be foreclosed by the ascertainment phrase. Congress must always account to the people for what it pays itself, but the Founding Fathers did not contemplate the inflexibility and rigidity which plaintiff seeks.

Repeatedly during the discussions preceding its adoption, our founders sought to preserve in the Constitution a flexible approach to government that would facilitate accommodation to changing conditions and experience. The Constitution is not to be parsed in the narrow, rigid, pedantic manner of a statute. It must remain flexible and adaptable, placing reliance upon the checks-and-balances built into our tripartite format and the sound attitude of voters expected at the polls. The "necessary and proper" clause of Section 8 of the same Article is but one expression of this sound approach. *McCulloch v. Maryland* (17 U.S.) 4 Wheat. 316, 4 L.Ed. 579 (1819).

The Salary Act and the Adjustment Act fix congressional compensation by law and these statutes are not prohibited by Article I, Section 6. Neither of these Acts insofar as they govern ascertainment of congressional compensation contravene the Constitution. Accordingly, plaintiff's motion for summary judgment is denied and the complaint is dismissed.

SO ORDERED.