Senator Gordon J. HUMPHREY, et al., Plaintiffs,

v.

James A. BAKER, III, et al., Defendants,

and

the Honorable Spencer M. Williams, et al., Intervenor-Defendants.

Civ. A. No. 87–0128–LFO.

United States District Court, District of Columbia.

June 30, 1987.

William C. Lane; William A. Strauss, Marbury Foundation for Law & Fiscal Responsibility, McLean, Va., Alan B. Morrison, Public Citizen Litigation Group, Washington, D.C., for plaintiffs.

Michael Davidson, Senate Legal Counsel, Ken U. Benjamin, Jr., Deputy Senate Legal Counsel, Morgan J. Frankel, Assistant Senate Legal Counsel, Washington, D.C., for defendant Secretary of the Senate.

Steven R. Ross, General Counsel to the Clerk, Charles Tiefer, Deputy GC to the Clerk, Michael L. Murry, Janina Jaruzelski, Asst. Counsel to the Clerk, U.S. House of Representatives, Washington, D.C., for defendant House of Representatives.

Richard K. Willard, Asst. Atty. Gen., Dept. of Justice, Joseph E. diGenova, U.S. Atty., Brook Hedge, Mary E. Goetten, Karen Stewart, Attys., Dept. of Justice, Washington, D.C., for defendant Baker.

Kevin M. Forde, Richard J. Prendergast, Chicago, Ill., Thomas F. Railsback, Nash, Railsback & Plesser, Washington, D.C., for intervenors-defendants.

## MEMORANDUM

OBERDORFER, District Judge.

### I.

This action was brought by one Senator, five Congressmen, an organization of taxpayers, and two individual taxpayers against several officers of the Legislative and Executive Branches to prevent them from disbursing to Senators, Congressmen, judicial officers and certain officials of the Executive Branch, salary increases purportedly authorized by the Federal Salary Act of 1967, 2 U.S.C. § 351 *et seq.*, as amended in 1985 by Pub.L. No. 99–190, 99 Stat. 1322 ("the Salary Act"). The matter is before the Court on cross-motions for summary judgment. The essential facts are not in dispute.

In essence the 1967 Act, as amended, authorizes the creation once every four years of a Commission, members of which are appointed variously by the President, the Chief Justice, the Speaker of the House and the President of the Senate for a term of one fiscal year. The Act requires the Commission to review the rates of pay of, among others, Senators, Congressmen, Justices and other federal judges, as well as high ranking officials of the Executive Branch. The Commission is supposed to submit to the President a report of the results of each review. The President, in turn, is required to

> include, in the budget next transmitted
> ... by him to the Congress after the date
> of the submission of the report and recommendations of the Commission ... his
> recommendations with respect to the exact rates of pay which he *deems advisable*....

2 U.S.C. § 358 (emphasis added). The recommendations of the President become effective and are to be printed in the Statutes

at Large and the Federal Register unless during the 30–day period following the transmittal of these recommendations Congress enacts a joint resolution disapproving the recommendations or enacts a statute establishing rates other than those proposed by the recommendations.[1] 2 U.S.C. §§ 359(1), 360.

In 1985, Congress provided for the convening of a Supplementary Commission to examine salary levels.[2] Pub.L. No. 99–190, § 135(a), 99 Stat. 1185, 1322 (1985). On December 15, 1986, the Commission recommended to the President substantial pay increases for the officials who are the subject of the Act, including an increase in the pay of members of Congress from $77,400 to $135,000. *See* Commission on Executive, Legislative and Judicial Salaries, *High Quality Leadership—Our Government's Most Precious Asset* (1986). In the budget submitted to Congress on Monday, January 5, 1987, the President recommended increases that were below the Commission's recommendations, based on the need "to reduce the Federal deficit and hold the costs of government to an absolute minimum." Budget of the United States Government, 1988, *Recommendations for Executive, Legislative and Judicial Salaries* at 1. The President's recommendations included an increase in congressional pay to $89,500. *Id.* at 2.

The Senate agreed to a resolution disapproving all the President's recommended increases on January 29, 1987. The House approved this resolution on February 4, 1987. Statements made by members of both houses at the time of the House vote made clear that Congress believed that the House had disapproved the recommendations *after* the 30–day period provided for in the Salary Act. *See, e.g.,* 133 Cong.Rec. S1592 (daily ed. February 3, 1987) (remarks of Senator Humphrey); *id.* at H543 (daily ed. February 4, 1987) (remarks of Representative Ford). The President expressed the same view when he signed the joint resolution of disapproval into law on February 12, 1987, stating that "[t]he Attorney General has advised me that the purported disapproval of my pay recommendations is without any legal force and effect because the House of Representatives did not vote on the resolution until after expiration of the statutorily prescribed 30–day period for passage of a joint resolution of disapproval." 23 Weekly Comp.Pres.Doc. 148 (February 16, 1987). It is undisputed that the defendants in this action are currently calculating the pay of senior federal officials at the rates recommended by the President in his 1988 budget.

Plaintiffs contend that the current salary levels are unlawful because they were enacted pursuant to a statutory scheme that violates Article I, Section 6, Clause 1, the so-called Ascertainment Clause of the Constitution. That clause provides that:

> The Senators and Representatives shall receive a Compensation for their Services, to be ascertained by Law, and paid out of the Treasury of the United States....

Plaintiffs urge that the Salary Act's delegation to the President of the authority to effect such changes in congressional salaries as he "deems advisable" is an impermissible transfer from Congress to the President of Congress' constitutional responsibility to fix congressional salaries by law. They point out that none of the delegations previously condoned by the appellate courts was so sweeping nor the standard so broad and subjective as that evidencing delegation to the President of the power to fix such salaries as he deems "advisable." For example, delegations cited by defendants to fix "fair and equitable

---

1. 2 U.S.C. § 360 provides that:
   The recommendations of the President ... shall be held and considered to modify, supersede, or render inapplicable, as the case may be, to the extent inconsistent therewith—
   (A) all provisions of law enacted prior to the effective date ... of such recommendations (other than any provision of law enacted in the [30–day] period specified....)

2. Congress deemed this Supplementary Commission necessary because the 1985 quadrennial commission had focused solely on the procedures for adjusting salaries and had made no specific recommendations about appropriate salary levels.

prices," *Yakus v. United States*, 321 U.S. 414, 420, 425, 64 S.Ct. 660, 665, 667, 88 L.Ed. 834 (1944), set rates that are "just and reasonable," *FPC v. Hope Natural Gas Co.*, 320 U.S. 591, 600, 64 S.Ct. 281, 287, 88 L.Ed. 333 (1944), regulate broadcasting consistently with the "public interest, convenience, or necessity," *National Broadcasting Co. v. United States*, 319 U.S. 190, 225, 63 S.Ct. 997, 1013, 87 L.Ed. 1344 (1943), or determine prices that will give a "fair return on the fair value" of property, *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 397, 60 S.Ct. 907, 914, 84 L.Ed. 1263 (1940), are governed by relatively objective standards that use terms of art whose meaning could be illuminated by ample precedent defining those terms. There is no such "intelligible principle," *compare J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 409, 48 S.Ct. 348, 352, 72 L.Ed. 624 (1928), to focus the decision of a President confined only to what he "deems advisable." *But see Amalgamated Meat Cutters v. Connally*, 337 F.Supp. 737, 745 (D.D.C.1971) (three judge court) (upholding provision of Economic Stabilization Act of 1970 that granted authority to the President to "issue such orders and regulations as he may deem appropriate to stabilize prices, rents, wages and salaries"). Moreover, none of these precedents is governed by the special language and history of the Ascertainment Clause. That clause was drafted by persons manifestly familiar with the long and bloody struggle by which England's Parliament used its power of the purse (as well as the sword) to emancipate itself from domination of kings purporting to rule by Divine Right. *See, e.g.*, 8 Encyclopedia Britannica at 500–07 (1968). It is unlikely that the Founding Fathers would have proposed to leave to the President the absolute power to fix congressional (or for that matter) judicial salaries or would have authorized Congress by law to delegate such power to a President.

**3.** The Senate defendant does not contest the standing of the congressional plaintiffs. *See*

## II.

Defendants respond, first, that neither the taxpayers nor the congressional plaintiffs have standing to sue.[3] The taxpayer plaintiffs concede that they lack standing, *see Richardson v. Kennedy*, 313 F.Supp. 1282 (W.D.Pa.1970) (three judge court), *aff'd*, 401 U.S. 901, 91 S.Ct. 868, 27 L.Ed.2d 800 (1971), so that if the matter is to be maintained it is on the claim of the congressional plaintiffs. The standing of these plaintiffs is established by *Pressler v. Simon*, 428 F.Supp. 302 (D.D.C.1976), *aff'd sub nom. Pressler v. Blumenthal*, 434 U.S. 1028, 98 S.Ct. 758, 54 L.Ed.2d 776 (1978). In *Pressler*, a three judge panel of this Court found that a Congressman who sought to challenge the constitutionality of the Salary Act and of the Executive Cost-of-Living Adjustment Act of 1975, 2 U.S.C. § 31, had alleged an injury sufficient to confer standing because "[w]hile salaries may be changed in the traditional fashion, the availability of procedures created by the statutes under attack make the vote of any single affected Congressman somewhat less efficacious." 428 F.Supp. at 305. The *Pressler* decision was affirmed without opinion by the Supreme Court. 434 U.S. 1028, 98 S.Ct. 758, 54 L.Ed.2d 776 (1978). Justice Rehnquist noted in a concurring opinion that "[o]ur 'unexplicated affirmance' without opinion could rest as readily on our conclusion that appellant lacked standing to litigate the merits of the question as it could on agreement with the District Court's resolution of the merits of the question." *Id.* at 1029, 98 S.Ct. at 758. However, his opinion was not joined by any other Justice. Had the Court concluded that Congressman Pressler lacked standing, it would more likely have dismissed the appeal for want of federal jurisdiction. Defendants have suggested no persuasive basis for distinguishing the *Pressler* Court's recognition of the standing of plaintiff in that case. Defendants' contention that the

Memorandum of Points and Authorities in Sup-

congressional plaintiffs lack standing must therefore be rejected.[4]

■ Defendants argue in the alternative that even if the congressional plaintiffs do have standing, this court should exercise "equitable discretion" and decline to hear their claims. The doctrine of "equitable discretion" was articulated for this Circuit in *Riegle v. Federal Open Market Committee*, 656 F.2d 873 (D.C.Cir.) *cert. denied*, 454 U.S. 1082, 102 S.Ct. 636, 70 L.Ed.2d 616 (1981). In that case, a Senator sought to enjoin the Reserve Bank members of the Federal Open Market Committee from voting on the ground that the procedures for their selection violated the Appointments Clause. The Court of Appeals determined that the separation of powers considerations that are raised in cases where a plaintiff is a member of Congress should not be addressed in the context of standing. *See* 656 F.2d at 879–80. However, the court held that while these considerations should not be used to deny a legislator standing, they should be considered "through a doctrine of circumscribed equitable discretion" which would counsel dismissal of the complaint "[w]here a congressional plaintiff could obtain substantial relief from his fellow legislators through the enactment, repeal, or amendment of a statute." *Id.* at 881.

Nonetheless, the court was careful to limit this doctrine to cases where private plaintiffs are available:

> In short, our standard would counsel dismissal of congressional plaintiff actions only in cases in which (i) the plaintiff lacks standing under the traditional tests, or (ii) the plaintiff has standing but could get legislative redress and a similar action could be brought by a private plaintiff.

*Id.* at 882. The court added that "[w]e would welcome congressional plaintiff actions involving non-frivolous claims of unconstitutional action which, because they could not be brought by a private plaintiff and are not subject to legislative redress, would go unreviewed unless brought by a legislative plaintiff." *Id.*

Defendant Baker suggests that the "no other plaintiff" exception to *Riegle* is no longer good law in this Circuit. He cites to the more recent decisions in *Vander Jagt v. O'Neill*, 699 F.2d 1166 (D.C.Cir.), *cert. denied*, 464 U.S. 823, 104 S.Ct. 91, 78 L.Ed.2d 98 (1983); *Conyers v. Reagan*, 578 F.Supp. 324 (D.D.C.1984), *dismissed as moot*, 765 F.2d 1124 (D.C.Cir.1985); *Sanchez-Espinoza v. Reagan*, 568 F.Supp. 596, 600 (D.D.C. 1983), *aff'd*, 770 F.2d 202 (D.C.Cir.1985); *Crockett v. Reagan*, 558 F.Supp. 893, 902 (D.D.C.1982), *aff'd*, 720 F.2d 1355 (D.C.Cir. 1983), *cert. denied*, 467 U.S. 1251, 104 S.Ct. 3533, 82 L.Ed.2d 839 (1984). It is true that the courts in these cases did not consider the availability of an alternative plaintiff in evaluating claims that it should exercise its equitable discretion. However, nothing in these opinions explicitly rejects the clear limitation on the doctrine of equitable discretion imposed by the *Riegle* court. It would be rash therefore to assume that that limitation has been impliedly overruled. In the absence of a more explicit directive from the Supreme Court or the Court of Appeals, this Court should not exercise its "equitable discretion" in a manner that would effectively preclude judicial review of an important challenge to an Act of Congress. *See Melcher v. Federal Open Market Committee*, 644 F.Supp. 510, 517 (D.D.C.1986).

### III.

■ On the merits of plaintiffs' constitutional claims, defendants assert that the

port of Defendant Secretary of the Senate's Motion for Summary Judgment at 3 n. 1.

**4.** More recent decisions in this Circuit have continued to recognize the standing of congressional plaintiffs who allege that they have been deprived of the opportunity "to participate and vote on legislation in a manner defined by the Constitution," *Moore v. U.S. House of Representatives*, 733 F.2d 946, 951 (D.C.Cir.1984), *cert. denied*, 469 U.S. 1106, 105 S.Ct. 779, 83 L.Ed.2d

775 (1985), as long as the legislators ground their claim in a specific provision of the Constitution. *See id.; Synar v. United States*, 626 F.Supp. 1374, 1382 (D.D.C.1986) (three judge court), *aff'd on other grounds sub nom. Bowsher v. Synar*, —— U.S. ——, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986); *Melcher v. Federal Open Market Committee*, 644 F.Supp. 510, 513–14 (D.D.C.1986). The plaintiffs claim here rests on Article I, Section 6, Clause 1.

Salary Act is a law within the meaning of Article I, Section 6, Clause 1, enactment of which discharged Congress' duty under that clause to see to it that salaries of Senators and Representatives are "ascertained by law." In any event, according to defendants, the 1976 decision in *Pressler* by the three judge District Court (summarily affirmed by the Supreme Court) established that the Salary Act does "fix congressional compensation by law," is "not prohibited by Article I, Section 6" and does not "contravene the Constitution." 428 F.Supp. at 306.

The *Pressler* Court examined the legislative history of the Ascertainment Clause and concluded that "[t]he most these historical sources reflect is that the Founding Fathers felt that the Congress should have ultimate responsibility for determining by law what the compensation of its own members should be, as opposed to the suggestion that this final responsibility be delegated to others." *Id.* at 306. The Court concluded that the challenged delegation was not "absolute," *id.* at 305, and that Congress had retained the "ultimate responsibility" to set its own pay. *Id.* at 306.

Plaintiffs would distinguish *Pressler* because intervening developments have diminished Congress' ability to reject the salary levels recommended by the President. For example, at the time of the *Pressler* decision, one House of Congress could effectively disapprove a presidential recommendation. In response to the Supreme Court decision in *INS v. Chadha*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983), Congress amended the 1967 Act to require both Houses to enact a joint resolution and present it to the President in order effectively to disapprove his recommendations. Moreover, under the interpretation of the 30–day provision advanced by the defendants, any joint resolution must be signed by the President within the 30–day period after the recommendations are transmitted to Congress. If this interpretation of the Salary Act is correct, the brief 30–day period provided for congressional disapproval by the Act, as amended, leaves a President with the latent power virtually to vitiate

Congress' disapproval prerogative. He can, for example, submit a budget containing a salary recommendation during a recess, and then veto a disapproval so that even if Congress succeeded in overriding the veto it could not, as a practical matter, do so within the 30–day "window" provided by the Act for congressional disapproval.

In addition, at the time of *Pressler*, Congress exercised ultimate control over the disbursement of any salary increase recommended by the President by use of its power to refuse to appropriate payments previously authorized. On several occasions, Congress prohibited the use of federal funds to pay for a cost of living increase which had been proposed by the President. *See, e.g.,* Pub.L. No. 94–440, 90 Stat. 1439, 1446 (1976). Since *Pressler*, Congress has provided that the funds necessary for "Compensation of Members" will be drawn from a special permanent appropriation not subject to annual vote. Pub.L. No. 97–51, § 130(c), 95 Stat. 966 (1981).

Nevertheless, the *Pressler* Court ruled that the Salary Act "explicitly reserved [to Congress] the right to enact legislation fixing congressional compensation regardless of what recommendation it receives from the President." 428 F.Supp. at 305. *See* 2 U.S.C. § 360. Amendments to the Salary Act legislation since *Pressler* was affirmed have not eliminated Congress' reserved power to fix congressional salaries. For example, 2 U.S.C. § 360 continues to recognize that the Congress may disapprove a Presidential recommendation by joint resolution during the 30–day period or supersede it by legislation enacted during or subsequent to that 30–day period. In addition, Congress retains, despite the automatic appropriation process, clear power to supersede that process with specific legislation. *See United States v. Will*, 449 U.S. 200, 225, 101 S.Ct. 471, 485, 66 L.Ed.2d 392 (1980). The existence of the ultimate power to set aside or suspend a presidential recommendation preserves a significant remnant of the factors which persuaded the *Pressler* Court that the delegation was

not absolute.[5] This remnant precludes a meaningful distinction of *Pressler* and requires a summary judgment for defendants that the Salary Act, as amended, does not violate Article I, Section 6, Clause 1 of the Constitution.

Plaintiffs have also challenged the pay raises accorded to other senior federal officials on the ground that "Congress has consistently linked its own pay to that awarded to senior Executive and Judicial branch officials; it would not have enacted this statute at all had it not been for this linkage." *See* Memorandum of Plaintiffs in Support of Motion for Summary Judgment at 2 n. 1. The Ascertainment Clause does not apply to Congress' authority with respect to executive and judicial salaries. Indeed, plaintiffs do not dispute that if Congress has authority under the Constitution to involve the President in fixing of compensation governed by the Ascertainment Clause, Congress also has authority to involve the President in determining executive compensation and in determining judicial compensation so long as it does not decrease the latter.[6] Since the Supreme Court's affirmance of *Pressler v. Simon* establishes the constitutionality of the process for fixing congressional salaries, the authority to fix executive and increase judicial salaries necessarily follows.

## IV.

■ Although plaintiffs' original challenge was to the constitutionality of the Salary Act as amended, their amended complaint alleges that even if the Act is valid, the President's recent recommendation of increases for Congressmen, judges, and key executive officials was effectively disapproved by enactment of a joint resolution within 30 days after the President transmitted the budget containing his salary increase recommendations. Plaintiffs' statutory claim turns on the provision of 2 U.S.C. § 359(1) which requires Congress to enact any joint resolution of disapproval "not later than the last day of the 30–day period which begins on the date of which such recommendations are transmitted to the Congress." It is plaintiffs' theory that when, on January 5, 1987, the President transmitted the budget containing the recommendation to the Office of the Speaker of the House and the Office of the President of the Senate, Congress was not in session. According to plaintiffs' statement of material facts, the 100th Congress did not convene until January 6, 1987. *See* Plaintiffs' Statement of Material Facts as to Which There is No Genuine Dispute at 3–4. Therefore, it is argued, the President's recommendations could not be "transmitted" to Congress until that date. Plaintiffs also argue that transmittal to the House was ineffective on the 5th because Representative James Wright was not elected the new Speaker of the House until the 6th. Thus, according to plaintiffs, when the House voted to disapprove the recommendations on February 4, 1987, the vote fell within the 30 day period. February 4 is not within the 30–day period which began on January 5, but is within the 30–day period which began on January 6.

Whether the House action on February 4 effectively disapproved the recommendations turns on whether transmittal of the recommendations was complete upon delivery of them to the Office of the Speaker of the House and the Office of the President of the Senate on January 5 before the 100th Congress convened and before there was a Speaker. The statutory scheme hitches the transmittal of the salary recom-

---

**5.** Plaintiffs would also distinguish *Pressler* because the plaintiff in that case insisted that the Ascertainment Clause required Congress to fix the quantum of salary and did not pursue as a secondary issue whether, assuming the power to ascertain compensation was delegable, the delegation of power to fix salaries as the President "deems advisable" was a "rational" (i.e. not arbitrary or capricious) procedure "for fixing congressional compensation by means other than enacting a specific statute fixing each pay change." *Pressler,* 428 F.Supp. at 305–06. However, this distinction does not overcome for plaintiffs the obstacle posed for them by the *Pressler* rationale: the Congress has reserved a power to set aside the President's recommendation so that the President's power is not impermissibly "absolute."

**6.** Article III proscribes reduction of judicial salaries. *United States v. Will, supra.*

mendations to the transmittal of the President's budget. The President is required by law to submit a budget "on or before the first Monday after January 3 each year." 31 U.S.C. § 1105(a). In 1987, that was January 5. If a new Congress can effectively receive a budget before the Congress formally convenes, it can effectively receive a salary recommendation. Moreover, in the absence of some clearer directive, transmittal to the House of Representatives and to the Senate can be effected by delivery to the Office of the Speaker of the House and to the Office of the President of the Senate. *Compare Eber Bros. Wine & Liquor Corp. v. United States*, 167 Ct.Cl. 665, 337 F.2d 624, 629 (1964), *cert. denied*, 380 U.S. 950, 85 S.Ct. 1082, 13 L.Ed.2d 968 (1965) ("... delivery to the White House is effective presentation to the President"). It is arguable that, unlike the President in the *Eber* case, the House of Representatives had not convened for the 100th Congress so that even if delivery to an agent of Congress could effect transmittal, there could be no viable agent for the House because, until it convened, its agent would have no principal. However, this argument is foreclosed by the Twentieth Amendment to the Constitution as interpreted by our Court of Appeals. The Amendment provides that:

> the terms of Senators and Representatives [shall end] at noon on the 3d day of January ... [of odd-numbered years] and the terms of their successors shall then begin.

Thus, the Court of Appeals for this Circuit has stated its "understanding under the Twentieth Amendment that the houses of each Congress constitutionally exist from January 3 of each odd-numbered year through January 3 of the next odd-numbered year, regardless whether the houses are sitting or in adjournment. Thus, even when the houses are not in session, they can exchange messages and have bills enrolled, signed, and presented to the President." *Barnes v. Kline*, 759 F.2d 21, 37 n. 29 (D.C.Cir.1985), *vacated sub nom. Burke v. Barnes*, —— U.S. ——, 107 S.Ct. 734, 93

L.Ed.2d 732 (1987). This authority forecloses plaintiffs' claim that the January 5 delivery to the Office of the Speaker was an ineffective transmittal of the President's recommendations. Thus, plaintiffs fail to establish that the informed judgments of the President and the Congress as to the effective date of transmittal were erroneous. The transmittal was effective on January 5 so that the February 4 action of the House joining the Senate's disapproval resolution and the February 12 action of the President signing the disapproval resolution occurred more than 30 days after the transmittal. Neither effectively disapproved of the President's recommendations.[7] Unless and until the President makes another effective recommendation or the Congress enacts, and the President signs, some other legislation determining salaries, those put in place by the President's January 5, 1987 recommendations are valid and effective. An accompanying order will deny plaintiffs' motion for summary judgment and grant summary judgment to the defendants.

### ORDER

For the reasons stated in the accompanying Memorandum, it is this 30th day of June, 1987, hereby

ORDERED: that plaintiffs' motion for summary judgment should be, and is hereby, DENIED; and it is further

ORDERED: that the motions of defendants and intervenor-defendants for summary judgment should be, and are hereby, GRANTED; and it is further

ORDERED: that this Complaint is hereby DISMISSED.

---

7. This determination eliminates the need to consider whether any joint resolution of disapproval must also be signed by the President within the 30-day period in order to be effective.