THE SENATE OF THE LEGISLATURE OF AMERICAN
SAMOA, LETULI TOLOA, in his capacity as Senate President,
and alternatively, as a taxpayer,and TUILEFANO VAELA`A and
TUANA`ITAU TUIA, in their capacity as Senators, and
alternatively, as taxpayers, Plaintiffs

v.

A.P. LUTALI, Governor of American Samoa, MALAETASI
TOGAFAU, in his capacity as Attorney General of American
Samoa, AITOFELE SUNIA,Treasurer of American Samoa,OPA
JOSEPH IULI, Director of Program Planning and Budget
Development, and SAPINI SIATU`U, Director of Human
Resources, Defendants

High Court of American Samoa
Trial Division

CA No. 40-94

August 29, 1994

Before RICHMOND, Associate Justice, VAIVAO, Associate Judge, and BETHAM, Associate Judge.

Counsel:      For Plaintiffs, Arthur Ripley, Jr., and Gata E. Gurr
                 For Defendants, Jennifer L. Joneson, Assistant Attorney General, and Elvis R.P. Patea, Assistant Attorney General

Order Denying in Part and Granting in part Motion to Dismiss:

Presently, we have before us defendants' motion to dismiss plaintiffs' amended complaint. First, we will briefly state the history of this case.

## HISTORY

In March 1994, defendant A.P. Lutali, the Governor of American Samoa ("the Governor"), announced his plan to effectuate salary step increases ("step increases") to American Samoa Government ("Government") career service employees so entitled. These employees had not received such increments between 1989-1991, due to a freeze by gubernatorial executive order, and the Governor proposed bringing these salaries to the levels where they would have been had the step increases become operative throughout those years.

In response, plaintiff Letuli Toloa, the President of the Senate ("the President"), expressed concern that the proposed step increases were not funded through the proper legislative channels and, therefore, could not be lawfully implemented.

On March 4, 1994, the President filed this action and obtained a temporary restraining order. Defendants stipulated to a preliminary injunction. On June 14, 1994, plaintiffs submitted the amended complaint at issue, which added the names of Senators Tuilefano Vaela`a and Tuana`itau Tuia as plaintiffs. The amended complaint also asserted that defendants had authorized the disbursement of funds for the payment of the Government's "past due debts," without proper legislative appropriation.

Despite attempts to reconcile their two positions, the parties before us have been unable to reach a definitive resolution of the issues, and trial is scheduled for September 2, 1994.

Defendants raised several points in the motion to dismiss, and we will address each of them in turn.

## THE AUTHORITY OF THE SENATE

Defendants allege that plaintiffs lack the legal capacity to sue, and that the individual plaintiffs as Senators cannot represent the Senate and lack the necessary standing to sue.

In support of the proposition that plaintiffs cannot sue, defendants point out that neither the Revised Constitution of American Samoa nor any applicable statutes specifically invest the Senate, or the Senators, with the capacity to sue.

■■■■ The ability of the House or Senate to maintain a suit against the executive branch is, in the proper circumstances, beyond question. This court has previously entertained such suits. *See House of Representatives v. Coleman & Tago*, CA No. 38-89 (Trial Div. 1989); *House of Representatives v. Coleman*, CA No. 93-83 (Trial Div. 1983). Additionally, the federal courts have also held that either house of Congress has the capacity and the standing in suits seeking to protect its lawmaking powers. *See Barnes v. Kline*, 759 F.2d 21, 26 (D.C. Cir. 1985); *Goldwater v. Carter*, 617 F.2d 697, 702 (D.C. Cir. 1979). The suit presently before us involves the protection of just such powers, and the Senate has the requisite standing in its own capacity. In *Baker v. Carr*, 7 L. Ed.2d 663, 678 (1962), the Supreme Court stated that the test for standing was whether or not the appellants "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues . . . ." U.S. Senators have also been found to have enough of a personal stake to achieve standing to maintain a suit in their individual capacity.

In *Kennedy v. Sampson*, 511 F.2d 430 (D.C. Cir. 1974), an individual senator was found to have standing to sue for a declaratory judgment. The court noted that as the subject of the suit was "legislative power," the individual senator's stake in the controversy was to vindicate the effectiveness of his vote. "No more essential interest could be asserted by a legislator." *Kennedy v. Sampson*, 511 F.2d at 436.

127

Other cases have also found that one or more legislators interest in maintaining the effectiveness of their votes is sufficient to give them the capacity and standing to sue. *See Coleman v. Miller*, 307 U.S. 433, 438 (1939) ("The complaining senators ... have a plain, direct and adequate interest in maintaining the effectiveness of their votes."); *Pressler v. Simon*, 428 F. Supp. 302, 304 (D.C.D.C. 1976) ("A [single] Congressman has standing to sue by virtue of his office where Executive action has impaired the efficacy of his vote").

The case before us has obvious similarities to those cited. Three Senators have alleged that the executive branch of the Government has overstepped its bounds and attempted to usurp legislative power. The Senators are, therefore, seeking to maintain not only the power of their votes but also a proper definition of the separation of powers in the context of this case. "(W)hen the assertion of authority by one branch interferes with the claim of institutional independence by another branch, it becomes the province and duty of the Judiciary to define the respective spheres of power." *U.S. v. Brainer*, 515 F. Supp. 627, 630 (D.C. Md. 1981). It is beyond dispute that the Senators have the right, in this type of situation, to maintain such a suit.

Defendants' motion to dismiss on the grounds of either lack of capacity to sue or lack of senatorial standing is denied.

## THE TAXPAYERS STANDING

Defendants also challenge the right of the three individual plaintiffs to sue in their capacity as taxpayers. Defendants allege that in this context, these plaintiffs must show a special interest or injury, not common to the public at large, and that they have failed to do so. The individual plaintiffs assert that a direct link exists between the activities of the Government and the consequences of those activities to taxpayers, such that these plaintiffs as taxpayers will suffer a direct burden from the Governor's fiscal management techniques.

It is well established that it is not enough to qualify, for standing purposes, merely as a taxpayer. Citizens must actually prove damage to themselves different from the public generally. *Knoxville Progressive Christian Coal. v. Testerman*, 404 F. Supp. 783, 788 (E.D. Tenn. 1975) (agency action). A party must establish that the alleged conduct would result in a tax increase or cause other irreparable injury. *Belford v. City of New Haven*, 364 A.2d 194, 199 (Conn. 1975). This injury must be different than that endured by the citizenry en masse. Additionally, there

128

must be a logical nexus between the alleged wrongful behavior and the harm suffered.

Here the individual plaintiffs claim that the Governor's actions have a direct effect on them as taxpayers. Because American Samoa is a relatively small place, they allege that individual tax payments are directly affected by discrete programs. They assert that an increased tax burden due to the Governor's actions is both more probable and more measurable than it might be in other, larger contexts.

Where individuals have sued as both legislators and taxpayers, courts have in general denied the latter. *See Pressler v. Simon*, 428 F. Supp. at 304. We agree. Although the individual plaintiffs have the requisite standing to sue as legislators, we do not find that they have adequately alleged that right as taxpayers. Indeed, American Samoa has a very small economy relative to other American jurisdictions, but this point does not save the individual plaintiffs' argument. They have not demonstrated links between the programs at issue and any consequential burden sufficient to set them apart from the public at large. Nor have they sufficiently demonstrated a resultant burden that they as taxpayers would incur due to the defendants' actions.

Defendants' motion to dismiss on the ground of taxpayer standing issue is granted.

## MOOTNESS

■ Defendants assert that the issue of the step increases is now moot, as the Governor has declared that he will not attempt to implement the increases in fiscal year 1994. However, we must disagree with defendants' position on this matter. A case becomes moot when the issues are no longer "live" or the parties lack a legally cognizable interest in the outcome. *Murphy v. Hunt*, 71 L. Ed.2d 353, 356 (1982) (per curiam); *Tuscan Medical Center v. Sullivan*, 947 F.2d 971, 977 (D.C. Cir. 1991).

■ The issue of effectuating salary step increases to career service employees so entitled is arguably moot. However, this case clearly falls into a long articulated exception to the mootness rule. This exception is primarily focused on cases that are "capable of repetition, yet evading review". *Murphy v. Hunt*, 71 L. Ed.2d at 357. In non-class actions, this exception is limited to cases where (1) a defendant terminates the challenged action before the issue is fully litigated, and (2) there is a reasonable expectation the plaintiff would be subject to the same actions

129

in the future. "Reasonable expectation" must go beyond a theoretical possibility of repetition to the same plaintiff. However, the case is not rendered moot simply by the fact that the defendant has, at the moment, ceased the behavior at issue. *See Delta Air Lines, Inc. v. Civil Aeronautics Bd.*, 674 F.2d 1 (D.C. Cir. 1982); *Murphy v. Hunt*, 71 L. Ed.2d at 357.

■ The legislative and executive branches of the Government have clashed before over what their respective spheres of funding power entail. We cannot say that the Governor's letter of June 27, 1994, clearly put the matter to rest once and for all--the remaining disagreements over the payment of past due debts, among other indicators, attest to that. In fact, the only factor tending to convince us that the step increase controversy is past is the fact that the Governor has voluntarily said that he will no longer proceed during fiscal year 1994. "A controversy still smolders when the defendant has voluntarily, but not necessarily permanently, ceased to engage in the allegedly wrongful conduct." *Hooker Chem. Co., Ruco Div. v. U.S., Etc.*, 642 F.2d 48, 52 (3rd Cir. 1981) (cite omitted); *see also City of Mesquite v. Aladdins Castle Inc.*, 71 L. Ed.2d 152, 159 (1982).

Because the issues in this case are clearly capable of repetition, yet may evade review, and because defendants ceased their allegedly wrongful conduct before the case could be fully litigated, and because there is a reasonable expectation that plaintiffs will be subjected to the same actions by defendants in the future, the motion for dismissal on the grounds of mootness is denied.

### ADDITIONAL DEFENDANTS

Defendants assert that plaintiffs have failed to join a number of potentially necessary parties. Defendants claim that plaintiffs should have joined the Government career service employees who may be entitled to the salary step increases, the various Government vendors who may be owed past debts, and the House of Representatives of the Legislature of American Samoa. We begin with the Government employees.

■ Joinder is appropriate when the court is asked to adjudicate upon the rights of a party who is not presently before the court. *Warner v. Pacific Tel. & Tel. Co.*, 263 P.2d 465, 467. In this case, the question before the court concerns the proper separation of powers between two branches of government. Regardless of the resolution of this dispute, the career service employees step increases may or may not be awarded. Their pecuniary interests in the step increases are not at the center of this

130

lawsuit. What we have before us is a dispute over proper procedure. The career service employees most definitely do not need to be joined, and complete relief can be afforded the parties presently before us without their direct participation.[1]

The House of Representatives is, likewise, not a necessary party to this lawsuit. As discussed above under standing, the Senate has the capacity to independently sue the executive branch. This is true whether or not the House is designated a party or chooses to intervene.

The question of joining the various Government vendors who are owed past due debts is more questionable. Plaintiffs have not clearly indicated the individual vendors' significance in this suit, but it appears unlikely as of now that these vendors will be central, or necessary, to the trial. We will, however, reconsider the vendors' joinder, should their substantive creditor's rights become at issue.

The motion to dismiss for failure to name necessary parties is, at this time, denied in its entirety.

## CONCLUSION

Defendants' motion to dismiss on the lack of the individual plaintiffs' standing as taxpayers is granted. Defendants' motion to dismiss on all other grounds is denied. Trial will proceed, as scheduled, on September 2, 1994.

It is so ordered.

---

[1] Joinder of necessary parties is governed by T.C.R.C.P. Rule 19. Under this rule, a party is necessary if the disposition of the case would impair that parties' rights, or would subject a present party to inconsistent obligations. Neither situation is applicable in this case.