John MELCHER, Honorable Member, United States Senate, Appellant

v.

FEDERAL OPEN MARKET COMMITTEE, et al.

No. 86–5692.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 5, 1987.
Decided Dec. 18, 1987.

Grasty Crews II, Washington, D.C., for appellant.

Richard K. Willard, Asst. Atty. Gen., Dept. of Justice, with whom Joseph E. diGenova, U.S. Atty., William Kanter and Alfred Mollin, Attys., Dept. of Justice, Washington, D.C., were on the brief, for appellees.

David C. Vladeck, with whom Alan B. Morrison and Eric R. Glitzenstein, Washington, D.C., were on the brief for amicus curiae, Public Citizen, Inc., urging reversal.

Tracy E. Mulligan, Rockville, Md., was on the brief for amicus curiae, Nat. Alliance for Constitutional Money, urging reversal and remand.

Edwin Vieira, Jr., Manassas, Va., was on the brief for amicus curiae, Coalition for Monetary Educ., urging reversal.

Before EDWARDS, STARR, and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge STARR.

Concurring opinion filed by Circuit Judge HARRY T. EDWARDS.

STARR, Circuit Judge:

In this appeal, John Melcher, a United States Senator, challenges the constitutionality of the method used to select five of the twelve members of the Federal Reserve System's Federal Open Market Committee (FOMC). Senator Melcher argues that the five members are "officers" of the United States and thus must be appointed by the President with the advice and consent of the Senate in conformity with the Appointments Clause of the Constitution, Art. II, § 2, cl. 2.

The District Court concluded that Senator Melcher had standing to bring this action, but ruled against him on the merits. In the trial court's view, the five members are not "officers" of the United States and therefore need not be appointed consistent with the strictures of the Appointments Clause. *Melcher v. FOMC,* 644 F.Supp. 510 (D.D.C.1986). We affirm the District Court's judgment, but on a different ground. In our view, this court's decision in *Riegle v. FOMC,* 656 F.2d 873 (D.C.Cir.), *cert. denied,* 454 U.S. 1082, 102 S.Ct. 636, 70 L.Ed.2d 616 (1981), required that the District Court dismiss the suit on grounds of equitable discretion.

## I

Senator Melcher's challenge represents a continuation of the long-lived battle over the composition of the Federal Open Market Committee. The history, structure and functions of the FOMC have been extensively discussed in prior decisions of this court, *see Committee for Monetary Reform v. Board of Governors,* 766 F.2d 538, 539–40 (D.C.Cir.1985); *Riegle,* 656 F.2d at 874–76; *Reuss v. Balles,* 584 F.2d 461, 462–64 (D.C.Cir.), *cert. denied,* 439 U.S. 997, 99 S.Ct. 598, 58 L.Ed.2d 670 (1978), and we therefore need not replough this well-worn ground. Suffice it to say that of the twelve members of the FOMC, five are not appointed pursuant to the procedures ordained by the Appointments Clause. Unlike their seven colleagues who are nominated by the President and confirmed by the Senate, these five members are selected by the boards of directors of the several Federal Reserve Banks. 12 U.S.C. § 263(a) (1982). The five members are chosen from the presidents and first vice presidents of the various Reserve Banks, who hold their Reserve Bank offices subject to approval by the Board of Governors of the Federal Reserve System.

In light of the rich history of litigation over the appointments question, the arguments of Senator Melcher (and the three *amici curiae* supporting his position) as to the merits can be set forth in brief compass. Analyzing the FOMC's composition and functions, Senator Melcher maintains that members of the FOMC exercise "significant governmental authority." Brief for Appellant at 7–9. An illustration of that authority is the FOMC's ability to influence the size of reserve accounts at Federal Reserve Banks. According to Senator Melcher, that power is equivalent to the sovereign power to coin money. *Id.* at 33–46. Under the Supreme Court's holding in *Buckley v. Valeo,* 424 U.S. 1, 118–43, 96 S.Ct. 612, 681–93, 46 L.Ed.2d 659 (1976) (per curiam), officials exercising such authority, the argument goes, must be appointed in the manner prescribed by the Appointments Clause.

## II

■ Although the appointments controversy continues unabated, we are confronted with an insurmountable barrier to the resolution of Senator Melcher's claim. That barrier is the doctrine of equitable discretion articulated by this court in *Riegle v. FOMC, supra,* 656 F.2d 873.

*Riegle* involved a challenge identical to that advanced by Senator Melcher: a United States Senator challenged the constitutionality of the procedures for appointment of the five Reserve Bank members of the FOMC and sought an injunction against the exercise of voting powers by those mem-

bers.[1] Although concluding that Senator Riegle had standing to sue, this court nonetheless "exercise[d] [its] equitable discretion to dismiss the case on the ground that judicial action would improperly interfere with the legislative process." *Riegle*, 656 F.2d at 882. Informing this holding was the fact that Senator Riegle had brought to the courthouse what amounted to a dispute properly within the domain of the legislative branch. Senator Riegle's attempt to win in court what he had sought and failed to obtain from his colleagues in Congress was viewed by the *Riegle* court as triggering highly sensitive concerns over the appropriate provinces of the Article I and Article III branches.

*Riegle* would thus appear to control this case. Relying on the District Court's analysis, however, Senator Melcher urges that our decision in that case does not warrant equity's staying its hand where, as here, no private plaintiff may be available to mount the constitutional challenge advanced by a Member of Congress. Brief for Appellant at 47; Reply Brief for Appellant at 18. The want of private plaintiffs to vindicate the constitutionally prescribed method of appointment is heralded, the District Court concluded, by this court's decision in *Committee for Monetary Reform*, supra, 766 F.2d 538. There, a group of private individuals and businesses, who allegedly suffered financial damage due to the money supply policies of the Federal Reserve System, raised constitutional challenges to the composition of the FOMC. This court dismissed the claim, holding that the plaintiffs lacked standing to maintain the suit. *Id.* at 544. In the District Court's view, that decision's delivery of a knockout blow to private litigants mounting an Appointments Clause challenge creates an entirely different state of affairs

from that presented to us in *Riegle*. *Melcher, supra*, 644 F.Supp. at 515–16.

The District Court's position in this regard is grounded upon the *Riegle* court's references to the probable availability of a private plaintiff to maintain a similar action. Interpreting those references as constituting part of *Riegle*'s holding, the District Court discerned the following principle of law: "[L]egislators will be denied access to the courts only when private plaintiffs are available to bring the type of suit brought by the legislator." *Id.* at 515 (footnote omitted). Since "it is beyond question that private plaintiffs lack standing to challenge the FOMC and its Reserve Bank members," *id.* at 516,[2] the District Court held that the doctrine of equitable discretion may not appropriately be invoked to dismiss Senator Melcher's complaint. *Id.* at 517. For the following reasons, we respectfully disagree.

First, the *Riegle* court's discussion of possible suits by private plaintiffs is dicta. *Riegle*'s clear holding is set forth in one sentence: "Where a congressional plaintiff could obtain substantial relief from his fellow legislators through the enactment, repeal, or amendment of a statute, this court should exercise its equitable discretion to dismiss the legislator's action." 656 F.2d at 881. Only after setting forth this clear principle of law does the court embark on a three-paragraph exegesis seeking to demonstrate how its standard would apply in a variety of situations. It is in this illustrative discussion that the private-plaintiff factor is introduced. At the close of the exegesis, the private-plaintiff factor disappears; the opinion closes with its focus once more on Senator Riegle's remedies in Congress, not on the presence (or absence) of a private plaintiff to carry on this sort of

---

1. *Riegle* represented the second attempt by a Member of Congress to challenge the allegedly unconstitutional composition of the FOMC. In the first challenge, brought by Congressman Henry Reuss, the complaint was dismissed for lack of standing. *Reuss, supra*, 584 F.2d at 471.

2. The District Court based its conclusion that all private plaintiffs lack standing to challenge the alleged violation of the Appointments Clause on the Supreme Court's decisions in *Allen v.*

*Wright*, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 586 (1984), and *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). For the reasons that follow in the text, we find it unnecessary to address this aspect of the District Court's opinion and, accordingly, decline to speculate on whether *anyone* would have standing to bring this suit.

suit. Reiterating the rationale undergirding the court's holding, Judge Robb in writing for the *Riegle* court stated: "It would be unwise to permit the federal courts to become a higher legislature where a congressman who has failed to persuade his colleagues can always renew the battle." *Id.* at 882.

Subsequent decisions confirm that the *Riegle* court's private-plaintiff references are dicta. In *Gregg v. Barrett*, 771 F.2d 539 (D.C.Cir.1985), Members of Congress and private plaintiffs brought an action asserting a right to an accurate report of Congressional proceedings. The court dismissed the private plaintiffs' complaint for failure to state a cause of action. Then, relying on the doctrine of equitable discretion, the court went on to dismiss the Congressional plaintiffs' constitutional challenge as well. The court declined the invitation to entertain the legislators' suits despite the court's appreciation of the obvious fact that such a disposition would render a constitutional question unreviewable. *Id.* at 549. In so doing, the *Gregg* panel observed that "this court has never squarely held that, where private plaintiffs are held to lack standing, an action by a congressional plaintiff may not be dismissed on prudential grounds." *Id.* at 544.

Similarly, the court's disposition of *Vander Jagt v. O'Neill*, 699 F.2d 1166 (D.C.Cir. 1982), *cert. denied*, 464 U.S. 823, 104 S.Ct. 91, 78 L.Ed.2d 98 (1983), provides further indication that the inability of private plaintiffs to maintain a suit does not constrain the court's exercise of equitable discretion. In *Vander Jagt*, the court dismissed an action brought by certain Congressmen contesting the allocation of committee and subcommittee seats. There again, the court declined to entertain the legislators' constitutional claim even though no private plaintiff appeared capable of bringing the issue to court. *Id.* at 1175 & nn. 24–25. So too, in *Committee for Monetary Reform, supra*, 766 F.2d at 544 n. 38, the court expressly left open the question of the relevance of the ability of private plaintiffs to sue, the obvious implication being that *Riegle* did not dispose of the question.

■ But there is a more fundamental difficulty with *Riegle*'s non-binding observations about the role of private plaintiffs. Specifically, the separation-of-powers concerns informing the doctrine of equitable discretion are, upon reflection, entirely unaffected by the ability of a private plaintiff to bring suit. As *Riegle* itself recognized, those concerns are implicated by the judiciary's resolution of issues that are appropriately left to the legislative arena. The ability (or not) of a private plaintiff to sue implicates an entirely distinct matter—the role of the federal courts in adjudicating non-frivolous claims of constitutional violations. The *Riegle* court in dicta seemed vexed by the possibility that "non-frivolous claims of unconstitutional action would go unreviewed by a court." 656 F.2d at 882. That concern places in tension the vindication of meritorious claims grounded in the higher law of the Constitution against the "proper—and properly limited—role of the courts in a democratic society." *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)).

The concern that constitutional claims be vindicated, the Supreme Court has taught, does not sweep so broadly as to remold the historic role of the federal courts in our constitutional system of government. Courts are not at liberty to embark upon a broad, undifferentiated mission of vindicating constitutional rights; after all, Article III specifically limits the judicial power of the United States to the resolution of actual cases or controversies. In *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), the Supreme Court recently reminded us again of the judiciary's traditional and limited role. There, private plaintiffs brought suit challenging a transfer of certain property to a religiously affiliated institution as violative of the Establishment Clause. The Court held that the plaintiffs lacked standing not because their constitutional claim was insubstantial, but because

their claim was nothing more than a "generalized grievance." Under the *Valley Forge* analysis, the fact that a constitutional violation might go unredressed does not, in itself, permit the federal courts to entertain the suit. That principle, it seems to us, applies just as readily to situations where Congressional plaintiffs are stymied by the (apparent) incapacity of prospective private plaintiffs waiting in the wings to carry on constitutionally based claims.

### III

■ Lest there be any lingering doubt, we expressly disapprove *Riegle's* intimation in dicta that the standing of private plaintiffs to bring a particular action affects the propriety of our entertaining the same challenge when brought by a legislator.[3] That being so, our disposition of Senator Melcher's claim is controlled by the holding in *Riegle:* if a legislator could obtain substantial relief from his fellow legislators through the legislative process itself, then it is an abuse of discretion for a court to entertain the legislator's action.[4] For that reason, the opinion of the District Court is vacated and its judgment dismissing the action is

*Affirmed.*

HARRY T. EDWARDS, Circuit Judge, concurring:

The narrow question this case presents is whether the principle of equitable discretion we articulated in *Riegle* obliges us to refuse to reach the merits of Senator Melcher's suit, notwithstanding the inability of some, perhaps all, private plaintiffs to raise his challenge following our decision in *Committee for Monetary Reform.* The answer is that those principles plainly do forbid our addressing Senator Melcher's constitutional argument. *Riegle* held that

dismissal of a legislator's suit is appropriate "[w]here a congressional plaintiff could obtain substantial relief from his fellow legislators through the enactment, repeal, or amendment of a statute." 656 F.2d at 881. In that case, we found that Senator Riegle could obtain redress were he able to persuade his colleagues to alter the method by which the five Reserve Bank members of the FOMC are appointed. Senator Melcher is in exactly the same situation. We are therefore constrained to dismiss his suit.

The possibility that no one else could bring Senator Melcher's constitutional challenge does not require us to depart from the result we reached in *Riegle,* despite stray dicta to the contrary in our opinion in that case. *Cf. Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 227, 94 S.Ct. 2925, 2935, 41 L.Ed.2d 706 (1974) ("The assumption that if respondents have no standing to sue, no one would have standing, is not a reason to find standing."). Upon reflection, it is no longer clear to me that equitable discretion is a viable doctrine upon which to determine the fate of constitutional litigation. Nonetheless, *Riegle* is the law of the circuit and it must be followed until rejected by this court *en banc* or the Supreme Court.

Because our holding in *Riegle* controls the resolution of this case, I see no reason to join the majority in speculating on the proper resolution of the alleged "tension" between "the vindication of meritorious claims grounded in the higher law of the Constitution" and the "role of the courts in a democratic society." I particularly wish to distance myself from the majority's sweeping claims about the mission of the federal courts in our constitutional system. These concluding dicta allude unnecessarily to monumental questions not before this

---

3. The statement in the text sentence disapproving *Riegle's* intimation in dicta has been separately circulated to and approved by the entire court, and thus constitutes the law of the circuit. *See Irons v. Diamond,* 670 F.2d 265, 268 & n. 11 (D.C.Cir.1981).

4. We are in agreement with our colleague's expression of concern over whether the court-

fashioned doctrine of equitable discretion "is a viable doctrine upon which to determine the fate of constitutional litigation." Concurring Op. at 565. As a panel, however, we are bound faithfully to follow the law of the circuit. Judge Edwards makes the point succinctly: "[*Riegle*] must be followed until rejected by this court *en banc* or the Supreme Court." *Id.*

court. I therefore concur in the majority's result, but not in its opinion.[*]

---

[*] I join in the majority's disapproval of the suggestion in *Riegle* that the ability of a private plaintiff to bring a particular suit affects the propriety of our entertaining the same challenge when brought by a legislator. *See* Majority op. at 565 n. 3.