Gordon J. HUMPHREY, Senator, et al., Appellants

v.

James A. BAKER, Secretary of the Treasury, et al.

No. 87–5310.

United States Court of Appeals, District of Columbia Circuit.

Argued April 29, 1988.

Decided May 31, 1988.

William C. Lane, with whom William A. Strauss and Alan B. Morrison, Washington, D.C., were on the brief, for appellants.

Janina Jaruzelski, Asst. Counsel to the Clerk, U.S. House of Representatives, with whom Steven R. Ross, Gen. Counsel to the Clerk and Charles Tiefer, Deputy Gen.

Counsel to the Clerk, U.S. House of Representatives, Washington, D.C., were on the brief, for appellee the Honorable Jack Russ, Sergeant at Arms.

Morgan J. Frankel, Asst. Senate Legal Counsel, with whom Michael Davidson, Senate Legal Counsel, Ken V. Benjamin, Jr., Deputy Senate Legal Counsel, Susan B. Fine, Asst. Senate Legal Counsel, Washington, D.C., Kevin M. Forde, Chicago, Ill., and Richard J. Pendergast were on the joint brief, for appellees Secretary of the Senate and Intervenor Judges.

John R. Bolton, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty. and Douglas Letter, Atty., Dept. of Justice, Washington, D.C., were on the brief for appellee, Secretary of the Treasury. Robert E. Kopp, Atty., Dept. of Justice, Washington, D.C., also entered an appearance for appellee, Secretary of the Treasury.

Before WALD, Chief Judge, and EDWARDS and STARR, Circuit Judges.

Opinion for the Court by Circuit Judge STARR.

STARR, Circuit Judge:

Senator Gordon Humphrey and five Members of the House of Representatives appeal from the District Court's dismissal of their attack on the constitutionality of the Federal Salary Act of 1967, as amended.[1] 665 F.Supp. 230. The case raises once again questions concerning the doctrine of equitable discretion, a principle that guides the courts of this circuit in determining whether suits brought by Members of Congress can appropriately be entertained.

I

This litigation represents a challenge to the manner in which salaries for Members of Congress are established.[2] The mechanism for determining those salaries derives from the Federal Salary Act of 1967, Pub. L. 90–206, § 225, 81 Stat. 613, 642 (1967), *codified at* 2 U.S.C. §§ 351–361 (1982) (as amended). The 1967 statute represented a significant departure from the historical practice of establishing the levels of pay for Members of Congress. From the founding of the Republic until 1967, Congressional pay was determined directly by Congress, in specific legislation setting specific rates of pay. The involvement of the Article II Branch took the customary, limited form of recommending legislation and, if the President approved, signing it into law.

This historic practice underwent a fundamental reordering by virtue of the 1967 statute, as amended in 1985. The new structure for setting Congressional pay ushered in by the Salary Act was aptly summarized by the District Court:

In essence, the 1967 Act, as amended, authorizes the creation once every four years of a Commission, members of which are appointed variously by the President, the Chief Justice, the Speaker of the House and the President of the Senate for a term of one fiscal year. The Act requires the Commission to review the rates of pay of, among others, Senators, Congressmen, Justices, and other federal judges, as well as high ranking officials of the Executive Branch. The Commission is supposed to submit to the President a report of the

1. The plaintiffs in the action included the National Taxpayers Union and two individual taxpayers, David L. Keating and Ralph Nader. The District Court concluded, however, that the taxpayer plaintiffs lacked standing. *See Richardson v. Kennedy*, 313 F.Supp. 1282 (W.D.Pa.1970) (three-judge court), *aff'd*, 401 U.S. 901, 91 S.Ct. 868, 27 L.Ed.2d 800 (1971). That conclusion has not been challenged on appeal.

2. As we shall note below, the statute at issue in this case provides the mechanism for setting salaries for the federal Judiciary and certain

senior Executive Branch officials, as well as Members of Congress. The plaintiffs' substantive challenge is focused, however, on the Congressional pay issue; the only allegations of illegality with respect to Judicial and Executive Branch salaries are that the provisions for setting those salaries are non-severable from the rest of the statute and must fall along with the mechanism for setting Congressional pay. In view of our disposition of the challenge to the Congressional pay issue, we need not reach the severability question.

results of each review. The President, in turn,

> is required to include, in the budget next transmitted ... by him to the Congress after the date of the submission of the report and recommendations of the Commission ... his recommendations with respect to the exact rates of pay which he deems advisable....

The recommendations of the President become effective and are to be printed in the Statutes at Large and the Federal Register unless during the 30-day period following the transmittal of these recommendations Congress enacts a joint resolution disapproving the recommendations or enacts a statute establishing rates other than those proposed by the recommendations.

Memorandum Opinion at 1–2, Joint Appendix (J.A.) at 43–44 (citation and footnote omitted.)

In the wake of a pay increase that went into effect in early 1987, Senator Humphrey and his co-plaintiffs initiated this action in federal district court. In their view, the statutory mechanism created by the Salary Act ran afoul of the Ascertainment Clause of the Constitution. That provision, found at Article I, Section 6, Clause 1, provides:

> The Senators and Representatives shall receive a Compensation for their Services, to be ascertained by Law, and paid out of the Treasury of the United States.

In addition to their Ascertainment Clause challenge, plaintiffs contended that the Salary Act's conferral upon the President of authority to set salary amounts as the President "deems advisable" was violative of the non-delegation doctrine informing our system of separated powers. The plaintiffs assert "that none of the delegations previously condoned by the appellate courts was so sweeping nor the standard so

broad and subjective as that evidencing delegation to the President of the power to fix such salaries as he deems 'advisable.' " Memorandum Opinion at 4–5, J.A. at 46–47. See 2 U.S.C. § 358 (President to recommend the "exact rates of pay which he deems advisable").

On cross-motions for summary judgment, the District Court concluded that the Congressional plaintiffs enjoyed standing by virtue of *Pressler v. Simon,* 428 F.Supp. 302 (D.D.C.1976) (three judge court), *aff'd sub nom. Pressler v. Blumenthal,* 434 U.S. 1028, 98 S.Ct. 758, 54 L.Ed.2d 776 (1978), a case which will loom large in our subsequent analysis. The court further concluded that the doctrine of "equitable discretion" articulated by this court in *Riegle v. Federal Open Market Committee,* 656 F.2d 873 (D.C.Cir.), *cert. denied,* 454 U.S. 1082, 102 S.Ct. 636, 70 L.Ed.2d 616 (1981), did not counsel in favor of dismissal of the legislators' action, because no private plaintiffs would be available to carry on the suit. *Riegle* had intimated in dicta that the inability of private plaintiffs to bring suit would render the doctrine of equitable discretion inapplicable; in circumstances, as here, where private plaintiffs were wanting, Congressional plaintiffs might therefore be permitted to maintain the suit. In his memorandum opinion, Judge Oberdorfer acknowledged that this court's post-*Riegle* cases had failed to consider the availability of private plaintiffs in determining whether the court should exercise equitable discretion. Exercising caution, however, the District Judge went on to conclude: "In the absence of a more explicit directive from the Supreme Court or the Court of Appeals, this Court should not exercise its 'equitable discretion' in a manner that would effectively preclude judicial review of an important challenge to an Act of Congress." Memorandum Opinion at 9.[3]

---

**3.** The District Court made this statement without the benefit of our decision in *Melcher v. Federal Open Market Committee,* 836 F.2d 561 (D.C.Cir.1987), *cert. denied* ___ U.S. ___, 108 S.Ct. 2034, 100 L.Ed.2d 619 (1988), which issued after the trial court's decision. In *Melch-*

er, we expressly rejected *Riegle's dicta* with respect to the relevance of the presence (or availability) of private plaintiffs, and held that the separation-of-powers concerns informing the doctrine of equitable discretion (*i.e.,* the inadvisability of calling on the judiciary to intervene in

In deciding the merits, the District Court viewed Congress' retention of power, both within the 30–day statutory period and thereafter, to displace or supercede the President's recommendations, as bringing the amended statutory mechanism within the protective holding of *Pressler v. Simon, supra,* which upheld the 1967 Salary Act's structure against Ascertainment Clause challenge. As Judge Oberdorfer felicitously put it in his opinion, the remaining control enjoyed by the Article I branch over the terms of its own compensation "precludes a meaningful distinction of *Pressler.*" Memorandum Opinion at 12. *Pressler* was therefore deemed controlling, and mandated rejection of Senator Humphrey's contention on the merits.

## II

■ In our view, our recent decision in *Melcher v. Federal Open Market Committee, supra,* 836 F.2d 561, makes it clear that it would constitute an abuse of discretion for the judiciary to allow Senator Humphrey and his House colleagues to maintain this suit. *See supra* n. 3. *Melcher* reaffirmed the law of this circuit, namely that the doctrine of equitable discretion applies in suits where legislators bring "to the courthouse what amounts to a dispute properly within the domain of the legislative branch." *Melcher,* 836 F.2d at 563. That is the case here. Whatever the prac-

tical difficulties and political realities, Senator Humphrey and his co-plaintiffs have readily at hand, as Judge Oberdorfer correctly observed, an "in-house" remedy within the meaning of this court's decision in *Riegle v. Federal Open Market Committee, supra,* 656 F.2d at 879. Under the doctrine of equitable discretion, the availability of an internally available remedy to Members of Congress means that it would be an abuse of discretion for the judiciary to entertain the action. *Melcher, supra,* 836 F.2d at 565. And, as we noted above, *see supra* n. 3, *Melcher* resolved any *Riegle*-spawned ambiguity over the relevance of the availability (or not) of private plaintiffs.[4]

We are fully mindful, however, that this circuit's recently minted doctrine of equitable discretion has not even been addressed, much less endorsed, by the Supreme Court. Moreover, several members of this court have previously expressed concern over whether equitable discretion represents "a viable doctrine upon which to determine the fate of constitutional litigation." *See Melcher, supra,* 836 F.2d at 565 (Edwards, J., concurring); *see also id.* at 565 n. 4 (majority opinion). Those concerns, which all members of this panel share, continue to trouble us. As a panel, however, we are of course bound faithfully to follow and apply the law of our circuit.

---

entirely intra-Congressional disputes) were not affected by the unavailability of private plaintiffs. *Id.* at 565 & n. 3.

**4.** Appellants argue that *Powell v. McCormack,* 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969), requires us to hear this case. We do not agree. *Powell* held justiciable a controversy between one Member of Congress and his House colleagues. Although the Court heard and decided the merits of Powell's constitutional challenge to the House's refusal to seat him, the case simply has nothing to do with this circuit's doctrine of equitable discretion. We do not hold that appellants lack standing or that this case is non-justiciable; rather, we choose to exercise our equitable discretion not to resolve this controversy, the proper resolution of which we believe appropriately lies elsewhere. Moreover, *Powell* involved quite a different situation from the present one. There, Congressman Adam Clayton Powell was being singled out for disfavorable treatment by his House colleagues;

here, on the other hand, every Member of Congress is being treated exactly the same.

Appellants make one further argument to save their challenge from the doctrine of equitable discretion. They argue that a legislative remedy was not available to several of the named plaintiffs who were freshmen Members when the 1987 salary increases were effected. They argue that it was unrealistic to expect these new Members to resort to the legislative process so early in their tenure. We do not doubt that the legislative remedy for appellants' grievance would be difficult to achieve; that, we suspect, is why they are in court. But the remedy is nonetheless available. As to its efficacy, we merely note that the Congress passed a disapproving resolution with respect to the 1987 salary increase, but failed by one day to do so within the 30–day statutory time period. We doubt, therefore, whether it is truly unrealistic to think that the process could not have been advanced by one day.

We therefore conclude that the District Court was obliged to dismiss this suit under the doctrine of equitable discretion.

### III

■ In the alternative, we hold that, even were *Melcher* not controlling, we are in accord with Judge Oberdorfer's view of the merits of appellants' challenge. In *Pressler v. Blumenthal*, 434 U.S. 1028, 98 S.Ct. 758, 54 L.Ed.2d 776 (1978), *aff'g Pressler v. Simon*, 428 F.Supp. 302 (D.D.C. 1976) (three-judge court), the Supreme Court summarily affirmed a decision of a three-judge district court, holding that the statutory mechanism for setting Congressional salaries in effect at the time did not violate the Ascertainment Clause. In that case, Congressman (now Senator) Larry Pressler brought suit challenging the method of setting Congressional pay established by the Federal Salary Act of 1967, Pub.L. 90–206, § 225, 81 Stat. 613, 642 (1967). The court held that, although the procedures established by the 1967 Act did not set salaries in the direct fashion that had historically obtained, *see supra* text at p. 212, the Ascertainment Clause was not to be read inflexibly so as to require Congress to establish specific figures in specific legislation. Rather, it sufficed that the procedures eventuating in the specific figures were set, *i.e.*, ascertained, by law.

In the course of its opinion, the three-judge court in *Pressler* observed that Congress had not delegated final responsibility for the setting of legislative salaries. To the contrary, Congress retained significant checks in the form of the appropriations process, the disapproval mechanism, and the ability at any time to enact superceding legislation. These checks, the court believed, were sufficient to vindicate the animating purpose of the Ascertainment Clause—to affix political responsibility for the level of Members' pay ultimately with Congress itself.

On direct appeal, the decision of the three-judge court was summarily affirmed by the Supreme Court. *Pressler v. Blumenthal*, 434 U.S. 1028, 98 S.Ct. 758, 54 L.Ed.2d 776 (1978). The Court provided no reasons for its affirmance; nonetheless, under settled authority, its disposition has precedential—and binding—effect on the lower courts. *See Hicks v. Miranda*, 422 U.S. 332, 344, 95 S.Ct. 2281, 2289, 45 L.Ed. 2d 223 (1975).

Thus matters stood until 1985. In that year, Congress amended the 1967 Act to correct perceived constitutional infirmities in the statutory structure flowing from the Supreme Court's holding in *INS v. Chadha*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983). *See* Pub.L. 99–190, § 135, 99 Stat. 1185, 1322 (1985).[5] *Chadha*, it scarcely bears repeating, condemned the theretofore frequently-enacted legislative veto device as violative of principles of separation of powers. Because the disapproval mechanism in the 1967 structure took the form of a legislative veto, Congress undertook to repair this fundamental defect. The 1985 Act thus amended the 1967 procedures for Congressional rejection of Presidential salary recommendations. Under the amended regime, legislative disapprobation must take the form of a joint resolution passed by both Houses and presented to the President for his signature. In all other material respects, the current Salary Act is the same as the one upheld against constitutional challenge in *Pressler*.[6] *Pressler*

---

5. The Act had been amended in 1977 to require affirmative Congressional *approval* of the President's recommendation before they went into effect. *See* Pub.L. 95–19, § 401, 91 Stat. 39, 45 (1977). The 1985 amendments, in addition to curing the legislative veto problem, restored the structure for Congressional *disapproval* of Presidential recommendations as originally enacted in 1967. *See* Pub.L. 99–190, § 135(e), 99 Stat. 1185, 1322 (1985). The restoration of the 1967 structure (which was upheld in *Pressler*) is of course what gave rise to this lawsuit.

6. An additional, minor distinction exists between the structure for setting Congressional salaries that was at issue in *Pressler* and the current mechanism. Until 1981, funds to pay Members' salaries were appropriated on an annual basis; thus, Congress could refuse to appropriate funds to pay its salaries, or for cost-of-living adjustments due Members and certain Executive Branch officials under the Executive Salary Cost-of-Living Adjustment Act, Pub.L. 94–82, § 204, 89 Stat. 419, 421 (1975). In 1981, however, Congress enacted a permanent appropriation to pay Members' salaries, which made

would thus indeed appear to be controlling, as Judge Oberdorfer concluded.

At the same time, however, the High Court has cautioned the inferior courts not to be too quick to ascribe binding force to summary dispositions. *See, e.g., Mandel v. Bradley,* 432 U.S. 173, 176, 97 S.Ct. 2238, 2240, 53 L.Ed.2d 199 (1977) (noting that the binding effect of summary disposition is limited to the precise questions presented and resolved); *see also Hicks v. Miranda, supra,* 422 U.S. at 344, 95 S.Ct. at 2289. The Supreme Court's summary affirmance is thus controlling here only if the 1985 amendments to the Salary Act did not significantly alter the statute upheld in *Pressler,* or if the governing legal doctrines have not been modified significantly since that decision. *See id.*

On these questions, we are in full accord with the District Court. In our view, post-*Pressler* changes in the Salary Act have not altered in any significant fashion the system for setting Congressional salaries. In *Pressler,* as in the present case, the plaintiffs challenged the fundamental structure established by the Salary Act. The essential claim there, as here, was that Congress must affirmatively set its own salaries, and may not, in conformity with the Ascertainment Clause, delegate this responsibility to the President. The argu-

ments employed in *Pressler* to attack the statutory structure were in the main the same ones we have before us today.[7] And, again, the three-judge court in *Pressler* rejected those arguments, observing that Congress retained ultimate power to set its pay through the already mentioned devices, such as rejection of the President's recommendations. In short, those devices, in varying degrees, remain efficaciously available to Congress.

The basic structure specifically approved in *Pressler* thus remains in force today. Any post-*Chadha* tinkering with that structure has, in our view, been insignificant in relation to the overall scheme. Indeed, the only difference of any import is that Congress must now muster a majority of both Houses to reject the President's salary recommendations, instead of relying on a one-House legislative veto. But that difference, of course, represents the vindication of the constitutionally ordained process of enacting legislation. Unconstitutional shortcuts have been eliminated in conformity with *Chadha's* teaching. The constitutionally prescribed remedy for appellants' grievances in this case—namely, action by the Congress in conformity with the procedures enunciated in Article I—remains the same. The marginally increased practical

---

it more difficult to employ the appropriations process to block salary increases. *See* Pub.L. 97–51, § 130(c), 95 Stat. 958, 966 (1981).

Appellants urge that this modest change in appropriations methodology significantly alters the constitutional status of the 1985 Act, in comparison with the framework upheld in *Pressler.* We disagree. Congress remains at liberty not to pay itself salaries to which it is entitled by law. The relative ease or difficulty of appropriating funds is not significant. Congress retains the power, notwithstanding the automatic appropriation process, to supplant that process with specific legislation at any time. *See United States v. Will,* 449 U.S. 200, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980). The Article I branch thus continues to bear political responsibility for whatever appropriations actions it takes.

**7.** Appellants urge that what they perceive as changes of late in the Supreme Court's treatment of separation-of-powers questions indicates that the Court would decide *Pressler* differently today. *See, e.g., INS v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983); *Bowsher v. Synar,* 478 U.S. 714, 106 S.Ct. 3181,

92 L.Ed.2d 583 (1986). We cannot agree, even assuming, *arguendo,* that the Court's analysis of separation-of-powers questions has "changed." The reason is that appellants' Ascertainment Clause challenge, properly understood, does not implicate separation-of-powers concerns. The thrust of the Ascertainment Clause claim is that the Constitution requires Congress to set its own pay, and for its Members to take political responsibility for the amounts chosen. Appellants' claim would therefore be the same if the authority to set salaries were vested in a Committee of the Congress, or the Congressional leadership, or any other entity within the Article I branch rather than in another branch of government.

To be sure, appellants' argument that the Act embodies an unconstitutional delegation of legislative power falls within the domain of separation-of-powers concerns. But no recent doctrinal developments have undermined the Supreme Court's treatment of delegation questions, which has remained essentially unchanged since the constitutional triumph of the New Deal.

difficulty of following the course mandated by the Constitution provides no justification for declining to follow a Supreme Court holding so closely on point.[8]

█ A final argument remains. In appellants' view, because the Salary Act fails to delimit the President's action in his salary recommendations (save to the extent that he must deem them "advisable"), the Act represents an unconstitutional delegation of legislative power to the Executive. To the extent that similar arguments were not rejected in *Pressler,*[9] we reject them here. Only the most extravagant delegations of authority, those providing no standards to constrain administrative discretion, have been condemned by the Supreme Court as unconstitutional. *See A.L.A. Schechter Poultry Corp. v. United States,* 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935); *Panama Refining Co. v. Ryan,* 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935). *Cf. Industrial Union Dep't, AFL–CIO v. American Petroleum Inst.,* 448 U.S. 607, 671, 100 S.Ct. 2844, 2878, 65 L.Ed.2d 1010 (1980) (Rehnquist, J., concurring in the judgment). Recent delegations as broad (or broader) than the one at issue here have survived delegation doctrine attack. *See Synar v. United States,* 626 F.Supp. 1374 (D.D.C.) (three-judge court), *aff'd on other grounds,* 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986); *Amalgamated Meat Cutters & Butcher Workmen v. Connally,* 337 F.Supp. 737 (D.D.C.1971) (three-judge court). But more fundamentally, it is not, upon reflection, a standardless delegation that we have before us. The Quadrennial Commission, *see supra* text at pp. 212–213, was established to provide guidance to the Chief Executive, and, as we have indicated at some length, Congress is afforded the opportunity explicitly to reject or modify any or all of the President's recommendations before they go into effect.[10] In our view, the Salary Act does not unconstitutionally delegate legislative power to the President.

\* \* \* \* \* \*

In sum, we hold that this circuit's doctrine of equitable discretion precludes the judiciary's hearing this case. In the alternative, we affirm the District Court's judgment on the merits.

*Judgment accordingly.*

---

**8.** We observe in this respect that, even if we did not deem ourselves bound by *Pressler* (by virtue of the factual differences featured by appellants), we would nonetheless view the Court's summary affirmance as singularly persuasive authority.

**9.** *See Pressler,* 428 F.Supp. at 305 ("Plaintiff urges, in short, that Congress is required itself to fix its pay and that that responsibility in this regard cannot, in effect, be delegated or bypassed in the fashion provided by the Salary Act....")

**10.** This factor, we believe, distinguishes the present delegation from most other statutory delegations of power. Congress can, of course, virtually *always* simply change a statute if it is dissatisfied with the course followed by an agency to which it has delegated power. It could be argued, therefore, that Congress always retains rejection power similar to the power retained in the Salary Act. But peculiarly under the Salary Act, Congress must specifically be provided with the President's salary recommendations before they can have any force.