# Presidential Action on Joint Resolution Disapproving Pay Raise

Under the Federal Salary Act of 1987, a pay raise recommended by the President becomes effective as law unless it is disapproved by a joint resolution "agreed to by the Congress" prior to the end of the 30-day period beginning when the President submits his recommendation. The Act thus requires passage of the joint resolution by both Houses of Congress, but not signature by the President, prior to the end of the period.

The Constitution requires that the joint resolution disapproving the pay raise be presented to the President, and he is entitled to the constitutionally prescribed 10-day period to consider it. If the President signs the joint resolution during this period, the pay raise is disapproved. If the President vetoes the joint resolution (and the veto is not overridden), the pay raise is effective.

With respect to Article III judges, the President's approval of the joint resolution after the 30-day period does not offend the Compensation Clause or section 2 of the joint resolution, since as a practical matter no increase in pay would vest in the judges prior to the expiration of the period.

February 7, 1989

MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

Pursuant to the Federal Salary Act of 1967, as amended, 2 U.S.C. §§ 351-361 (the "Act"), the President transmitted to the Congress on January 9, 1989, recommendations for the increase in salaries of certain members of the executive, legislative, and judicial branches. Pursuant to 2 U.S.C. § 359(1), this recommendation is to become effective as law "unless [the] recommendation is disapproved by a joint resolution agreed to by the Congress not later than the last day of the 30-day period which begins on the date of [sic] which such recommendations are transmitted to the Congress."

The Senate voted in favor of a resolution of disapproval of the President's recommendations, S.J. Res. 7, 101st Cong., 1st Sess. (1989), on February 2, 1989. *See* 135 Cong. Rec. 1461 (1989). Today, the last day of the thirty-day period following receipt of the President's recommendations, we understand that the House of Representatives either has, or will vote, in favor of S.J. Res. 7, or another resolution of disapproval, which will then be transmitted to the Senate for its approval. Under the Act, the joint resolution must be "agreed to by Congress" within the thirty-day period. The question has arisen whether this joint resolution must also be signed by the President within the thirty-day period.

50

Primarily, we think this question is answered by the plain language of the Act. By its terms, the Act requires *agreement* by both Houses of Congress prior to the expiration of the thirty-day period, not signature by the President. Thus, by its express terms, the Act is stated as a limitation on Congress, not the President. This interpretation is also supported by the Senate Committee report which, in describing the effect of this language, states: "The Congress will have 30 days to *pass* a joint resolution disapproving those recommendations." S. Rep. No. 210, 99th Cong., lst Sess. 25 (1985) (emphasis added). Putting to one side for the moment the serious constitutional question which would be presented by a purported limitation on the President's constitutionally-defined period of consideration for a joint resolution, had Congress intended to so limit the President, it presumably would have used the term "enacted" rather than "agreed to." As a matter of constitutional law, of course, no joint resolution can be enacted into law without it being presented for the President's signature or its constitutionally-prescribed equivalent.[1] In this regard, the Act speaks of disapproval by a joint resolution of Congress and the Supreme Court's decision in *INS v. Chadha*, 462 U.S. 919 (1983), leaves no doubt that any resolution must be presented to the President pursuant to Article I of the Constitution if it is to be effective as law.

It is because of the constitutional requirement of presentment as affirmed in *Chadha*, however, that we anticipate it will be argued that Congress should be understood as intending to require signature by the President prior to the expiration of the thirty-day period. Indeed, this interpretation of the statute was advanced by both the House and Senate counsel in litigation relating to the last pay raise under the Act, *see Humphrey v. Baker*, 665 F. Supp. 23 (D.D.C. 1987), *aff'd*, 848 F.2d 211 (D.C. Cir.), *cert denied*, 488 U.S. 966 (1988), although neither the district nor appellate court passed on the question. *See* 665 F. Supp. at 30 n.7. For the reason stated above, we do not believe that this argument will prevail in litigation. As already indicated, we think this argument is incorrect because of the literal language of the Act. However, even if one were to admit ambiguity in the Act's meaning, we question whether Congress can by statute deprive the President of the ten-day period of consideration afforded to him by Article I, Section 7 of the Constitution. In short, the Act by its express terms only states a thirty-day limitation applicable to Congress. This thirty-day limitation cannot vitiate either the Constitution's requirement that a joint resolution be presented to the President or the President's ten-day period of consideration.[2]

---

[1] Presidential signature is not the only method by which a bill becomes law under Article I of the Constitution In addition, a bill becomes law if (absent an adjournment of Congress) the President does not return to Congress the bill within ten days, or if he does return it with his objection, his objection is overridden by a two-thirds vote of each house U S Const. art. 1, § 7, cl 2. In this memorandum, however, we use "signature" as a shorthand reference for the three methods by which a bill becomes law.

Nonetheless, given the stakes involved, if the President does not sign the joint resolution today within the 30-day period, we believe litigation is likely. Accordingly, as a matter of prudence, if the President wishes to avoid litigation over the pay raise, however unmeritorious, we recommend that he sign the joint resolution of disapproval before midnight tonight.

As we write this, we have not been advised of the exact language of the final enrolled joint resolution. In this regard, we are unaware if it incorporates section 2 of S.J. Res. 7, which contains its own effective date provisions. Section 2(a)(1) of S.J. Res. 7 provided that "if the date of the enactment of this resolution is on or after February 8, 1989, the rates of pay for all offices and positions increased by the recommendations," shall revert to their prior levels. But it adds the proviso in section 2(a)(2)(B) that: "[t]he provisions of [section 1] and [section 2] shall not apply to reduce the rate of pay of any judge or justice appointed pursuant to article III of the Constitution of the United States."

The question raised by section 2 of S.J. Res. 7 is — if the joint resolution is signed by the President, and thus "enacted" into law on or after February 8 (after the thirty-day period)— will Article III judges be entitled to the pay raise by virtue of section 2(a)(2)(B). We think not. Accepting our initial conclusion that the pay raise will not go into effect even if the President signs the disapproval resolution (which is section 1 of S.J. Res. 7) after the thirty-day period has expired, the pay of Article III judges will never have been "increased,"[3] and thus the joint resolution disapproving the pay raise can be applied to Article III judges without "reduc[ing]" their rate of pay as forbidden by section 2(a)(2)(B) of S.J. Res. 7.

In conclusion, the thirty-day limitation in the Act is by its terms applicable only to Congress. Moreover, the Constitution requires that the joint

---

[2] This interpretation is not inconsistent with section 359(2), which provides that the effective date of the pay increase in section 359(1) shall be the first day of the first pay period beginning after the close of the thirty-day period. It is true that if the thirty-day period ends just before the beginning of a pay period, the President might not have acted on a joint resolution on the first day of the first pay period after Congress agrees to the joint resolution. But there is no reason a pay increase cannot be retroactive to an earlier date, should the President determine to disapprove the joint resolution.

[3] We understand that the next applicable pay period for Article III judges begins March 1, 1989. Under *United States v. Will*, a judge's salary increase "'vests' for purposes of the Compensation Clause *only when it takes effect* as part of the compensation due and payable to Article III judges " 449 U.S 200, 229 (1980) (emphasis added). Because section 359(2) of the Act provides that the recommended pay increases do not become effective until the first day of the first pay period after expiration of the thirty days, we read *United States v. Will* to mean that no vesting within the meaning of the Compensation Clause of the Constitution, Article III, Section 1, would occur so long as the judges' raises did not become effective conclusively or were rescinded prior to March 1, 1989.

Even were the judges' pay period not March 1, 1989, but rather a date preceding the date on which the President signed the bill, we doubt that the judges would constitutionally be entitled to receive a raise under the Compensation Clause. While the Act designates the pay period on which the raises are to take effect, this designation must be purely for accounting purposes to be consistent with the Supreme Court's decision in *Chadha*. Consistent with *Chadha*, after the passage of the joint resolution, neither the judges nor anyone else would be entitled to a pay raise unless and until the President vetoed the joint resolution.

resolution be presented to the President, and we believe that the President is entitled to the prescribed ten-day period to consider it. If the President signs the joint resolution during this period, the pay raise is disapproved. If the President vetoes the joint resolution (and the veto is not overridden), the pay raise is effective in accordance with section 359(2) of the Act. With respect to Article III judges, the President's approval of the joint resolution after the thirty-day period does not offend the Compensation Clause or section 2 of S.J. Res. 7, since as a practical matter, we understand no increase in pay would vest in the judges prior to March 1, 1989.

DOUGLAS W. KMIEC
*Assistant Attorney General*
*Office of Legal Counsel*