John BOEHNER, et al., Plaintiffs,

v.

Donnald K. ANDERSON,
et al., Defendants.

Civ. A. No. 92–2427.

United States District Court,
District of Columbia.

Dec. 16, 1992.

---

Jerry Boykin, Redmon, Boykin & Baswell, Alexandria, VA, John C. Armor, Washington, DC, for plaintiffs.

Michael Davidson, Senate Legal Counsel, Steven R. Ross, Gen. Counsel to the Clerk, House of Representatives, Washington, DC, for defendants.

Roger Witten, Ronald J. Greene, Washington, DC, for Amicus Common Cause.

Stuart Gerson, Asst. Atty. Gen., Civ. Div., Dept. of Justice, Washington, DC, for the President.

## MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

### I. *Standing*

As the Court finds that at least some of the parties have standing in this case, the Court will address the merits of this case.

### II. *Validity of ratification of 27th Amendment*

Because this issue was raised only by Common Cause, as amicus curiae, and not by any of the defendants in this case, any determination of this issue will have to await another case.

1. The Twenty-seventh Amendment to the U.S. Constitution provides:
   No law, varying the compensation for the services of the Senators and Representatives,

### III. *Constitutionality of Challenged provisions of Ethics Reform Act of 1989*

Plaintiffs challenge two provisions of the Ethics Reform Act of 1989 (ERA) as violating the 27th Amendment[1] to the U.S. Constitution: (1) the automatic pay increases (or "COLAs") and (2) the quadrennial pay increases.

A. *Quadrennial Commission Pay Raises.* ERA provides for the establishment of a Citizens' Commission on Public Service and Compensation. This Commission is to make recommendations to the President every four years regarding the pay level of high-level Government officials, including Members of Congress. After receiving the Commission's recommendations, the President, in turn, is to submit a recommendation concerning the pay levels to Congress. To become effective, the President's recommendations must be approved by a recorded vote and enacted into law. The first Citizens' Commission is to be convened in fiscal year 1993; its first report to the President is due by December 15, 1993. The President is scheduled to transmit his first recommendation under the Ethics Reform Act to Congress in January 1994. Should the President recommend a pay increase and should the Congress approve it, the first Congressional quadrennial pay raise under the Act would come into effect January 1995. Ethics Reform Act of 1989, Pub.L. 101–194, § 701, 103 Stat. 1763–1767.

It is worth noting that the Ethics Reform Act of 1989 was not the first piece of legislation to create such a commission. The quadrennial review process extends back to the Postal Revenue and Federal Salary Act of 1967, 81 Stat. 642, which established a Commission on Executive, Legislative, and Judicial Salaries to review the salaries of high-level Executive, Legislative, and Judicial officials every four years. This Commission also was directed to make recommendations to the President concerning salary adjustments of high-level Government officials, and the President would in turn submit recommendations to

shall take effect until an election of Representatives shall have intervened.

Congress. If both Houses approved a salary adjustment recommended by the President, such adjustment would take effect soon thereafter. The Ethics Reform Act of 1989 abolished this Commission, and replaced it with the Citizens' Commission, which is to have a different composition than its counterpart under the Salary Act.

### B. COLA's.

Congress first provided for automatic annual adjustments to its Members' pay in the Executive Salary Cost-of-Living Act of 1975, Pub.L. 94–82. The Ethics Reform Act of 1989 (ERA) simply establishes a different methodology for calculating the automatic annual adjustments, called CO-LAs. Under ERA, the COLA is calculated by comparing the percentage change in the Employment Cost Index and subtracting one-half of one percent. P.L. 101–194, § 704. The purpose of using this index is to maintain some comparability between governmental and private-sector salaries. See 5 U.S.C. § 5301(3). The first COLA under the ERA went into effect on January 1, 1991. P.L. 101–194, § 704(b).

The Court finds both challenged provisions—the 3.2% cost-of-living adjustment and the quadrennial review—to be lawful in every respect. Before explaining the Court's reasoning behind this conclusion, some background to the Ethics Reform Act of 1989 is in order.

### C. Background.

We live in a truly great society. We have a system of government that is unmatched. An examination of our 200 year old Constitution and the history that surrounded its adoption has left me awestruck. I often wonder what absolute geniuses Madison, Hamilton, Jefferson and the others who wrote the Constitution must have been. It is an incredible document. The concept of a tripartite government with a system of checks and balances was an ingenious idea; history has proven that point. We owe it to our founding fathers and to the citizenry our Constitution protects to provide the most robust and effective government possible.

It clearly could not have been the concept of our founding fathers to provide government "on the cheap." This Court agrees with President Bush, whose letter supporting the 1989 Ethics Reform Act stated, "The skills of these individuals [that is, representatives and senators] are essential to the quality of service government provides to the American people." 135 Cong.Rec. at H8745.

If we want good government, we must pay for it. Like any other commodity in a free enterprise society, the cost of government has its price. While it may be a cliche, it is often the fact that you only get what you pay for.

If there was one failing of our founding fathers, it is that they did not spell out with sufficient clarity how important it was to pay our government leaders a decent and adequate compensation. That question was, by and large, left to future generations.

For many years little was done to remove governmental pay levels from the arena of "politics for hire". As a result many practices arose that were deleterious to our society. For years at a time, Congressional pay raises were not forthcoming. And Congress dealt with this problem, in part, by allowing its Members to accept money from special interest groups—money which would, in effect, be "off the books."

It was in this context that the concept of honoraria crept into the pay system. Because Congress was unwilling to bite the political bullet and provide its members a living wage, members supplemented their salaries by taking fees from outside sources as compensation for so-called private speech making and for attending meetings of various special interest groups. Initially there was no control over the amount of fees a Representative or Senator could receive, or what services she or he was to perform for the fee. Often, after attending a private interest group, an envelope with a check or cash would be slipped to the member. Since he or she did not want to bite the hand or hands that were feeding him or her, the member

would make a speech to suggest he or she was in the group's "pocket."

This is not ancient history. This was the practice until just a few years ago when Congress, realizing the appearance of this "off the books" pay system did not pass the "perception of propriety" test, decided to change the system.[2]

The Ethics Reform Act of 1989 was the culmination of this long-overdue and well-motivated Congressional desire to change the system. This Act is a comprehensive piece of legislation which links pay provisions to substantive changes in the ethical rules governing Members of Congress, Executive and Judicial Branch officials.

The Ethics Reform Act of 1989 does a number of things. It restored several previous COLA's which in the past Congress had denied its members. It authorized a one-time pay increase of 25% for Representatives, effective January 1, 1991. It altered the composition of the quadrennial review Commission, and requires that any future pay raises stemming from the Commission's recommendations become effective only upon a recorded vote of Congress and only after an intervening election. It phased in a prohibition on honoraria and tightens up rules on gifts and travel and other forms of compensation. And the Act imposes limits on post-Government employment of Members and high-ranking legislative staff.

The interplay of these provisions accomplishes a critical task—namely, the reestablishment of the important principle that public officials should be paid by the public only, while simultaneously ensuring that our public officials are paid a decent wage. Because inflation could threaten to upset the balance struck by this important piece of legislation, as the last piece of the puzzle its drafters provided for automatic annual cost of living adjustments, which cannot exceed 5% in any given year.

As Senator Mitchell aptly stated:

[T]he appropriate approach is to consider this for what it is, a comprehensive package of ethics reform, which includes a series of measures which are interrelated, *most notably the cost-of-living and the pay provisions* on the one hand and the prohibition of honoraria on the other.

135 Cong.Rec. at § 15948–50 (emphasis added).

From any objective appraisal, this was an incredible piece of legislation. It was truly a courageous act for the Congress and the President to take. It was always recognized that some of the provisions would result in the approving members' and the President's taking a certain amount of "political heat" for their support of the legislation. Predictably, the demagogues and "mischiefs"—just to define that new addition to the Oxford English Dictionary, "mischiefs" are those who commit mischievous acts—came to the fore, ignoring the salutary purposes of the legislation and accusing the members who voted for it of raiding the treasury.

To the contrary, this nation's elected representatives are by and large hard working, diligent and highly intelligent. They are decent individuals, otherwise they would not have received the votes of their constituents. They do not live "high off the hog" and many have difficulty in balancing their personal budgets because they have to maintain two residences—one in the District of Columbia, the other in their home district. To make ends meet a number of legislators live in quite modest quarters, often sharing them with other elected officials. It is clearly no crime for these individuals to earn a wage that is commensurate with their awesome responsibilities. We have exceptionally good government in this nation—many would say the best in the world. Clearly, it is the most emulated form of government in the world. One way to maintain high quality government is to provide our elected officials with a living

---

**2.** As the Bipartisan Task Force on Ethics of the U.S. House of Representatives stated:

First, substantial payments to a Member of Congress for rendering personal services to outside organizations presents a significant and avoidable potential for conflict of interest; second, substantial earnings from other employment is inconsistent with the concept that being a Member of Congress is a full-time job; and third, substantial outside earned income creates at least the appearance of impropriety and thereby undermines public confidence in the integrity of government officials.

135 Cong.Rec. H9256 (November 21, 1989).

wage that automatically changes to reflect changed economic conditions. It is in this way that congressional pay can be kept out of the political arena to the greatest extent possible. Too often in the past, because of the "politics" of giving themselves a pay raise, legislators did not vote to pay themselves even a modest cost of living raise. This put the pay system out of balance which later required the enactment of catch-up raises which had even a greater political downside. The 1989 Ethics Reform Act, by making COLAs automatic, was designed to avoid this unacceptable "roller coaster" method of congressional pay. The depoliticization of congressional pay as embodied in the 1989 legislation was certainly an important step in insuring continued good government.

D. *Analysis.*

■ As already stated, the Court finds that any pay raises stemming from the Ethics Reform Act of 1989 unquestionably meet the requirements of the 27th Amendment.

The Ethics Reform Act became law in November 1989. An election was held in November 1990. The first COLA became effective in January 1991 and the first Citizens' Commission will not be convened until January 1993. During the 1990 elections, and again in 1992, voters had an opportunity to approve or disapprove the legislation. By its very terms, the challenged provisions of the Act comport with the requirements of the 27th Amendment.[3]

Regarding any quadrennial pay raise enacted following the recommendations of the Citizens' Commission and the President, which as a distinct law would itself be subject to the dictates of the 27th amendment, the Ethics Reform Act of 1989 specifically provides that any quadrennial pay raise enacted by Congress shall not take effect until after an intervening election of the House of Representatives. Thus, any such law passed following the procedures

established by the Ethics Reform Act squarely meets the terms of the 27th Amendment.

■ Plaintiffs raise no serious arguments regarding the constitutionality of the quadrennial review process and any pay raises which might be enacted pursuant to it. Plaintiffs argue that there is a possibility of a short period during which a Congressperson who voted on such a raise and who was voted out of office could benefit from the pay or pension raise. The Court emphasizes that, at this point, this is only a possibility, as congress could pass legislation to alter the date of the first pay period of each new year. Moreover, it is highly probable that such an eventuality would not violate the 27th amendment, which requires only that an interceding election occur, not that the next Congress be seated, before a raise can take effect.

To circumvent what would appear to be an equally unavoidable conclusion that the COLAs are constitutional, Plaintiffs rely primarily on two theories. First, plaintiffs argue that the 27th amendment requires that Congress enact a separate law for each and every raise, including a COLA, which is to be given to its Members. This is an extremely strained reading of the 27th amendment—a reading for which the plain language of the amendment provides no support.

Indeed plaintiffs' theory was rejected by the Court of Appeals for the District of Columbia in a case similar to that presently at bar, *Humphrey v. Baker,* 848 F.2d 211 (D.C.Cir 1988). *Humphrey* involved a challenge under the Ascertainment Clause to the provisions of the Salary Act which delegated the responsibility for setting Congressional salaries to the President.

The Ascertainment Clause, found at Article I, Section 6, Clause 1 of the Constitution provides:

The Senators and Representatives shall receive a compensation for their Servic-

---

3. Moreover, it is questionable that, even if there had not been an intervening election, the Act would have violated the 27th amendment since the 27th amendment was not ratified until over two years (and more than one election) after the Act was enacted. Where, as is discussed below, no continuing violation of the amendment is engendered by the legislation, it is unlikely that the Court would retroactively strike down the Act for its failure to comply with a constitutionally-required delay in its implementation which did not exist at the time of the Act's passage.

es, *to be ascertained by Law,* and paid out of the Treasury of the United States.

The essential claim in *Humphrey* "was that Congress must affirmatively set its own salaries, and may not, in conformity with the Ascertainment Clause, delegate this responsibility to the President." *Humphrey,* 848 F.2d at 216. The Court rejected this argument.

Plaintiffs argue that, under the 27th amendment, *Humphrey* is no longer good law. The Court disagrees. The 27th amendment does nothing to alter Congress' legitimate delegation of responsibilities to implement a duly enacted salary structure and adjustment mechanism. Plaintiffs do not provide, and the Court cannot find, any convincing evidence that the drafters and ratifiers of the amendment contemplated such a far-fetched interpretation of the amendment.

Second, plaintiffs suggest that each COLA constitutes a separate law, which varies Congress' compensation before an election has intervened and which therefore violates the 27th Amendment. This argument is equally far-fetched. The annual COLAs are not subject to the bi-cameralism requirements of the Constitution; each year the COLA becomes effective by the terms of the 1989 Act; no additional law is necessary. In short, each COLA is not a law and, therefore, is not subject to the requirements of the 27th amendment. Hence, no additional intervening elections are necessary before each COLA can take effect.

In passing the Ethics Reform Act, Congress determined to provide automatic annual adjustments to its Members salaries, in order to keep up with inflation and earnings in the private sector. To implement its decision, Congress prescribed a COLA formula and delegated the tasks of calculating and otherwise implementing the COLA to officials at the Bureau of Labor Statistics and at Congress. This is a classic example of an authorized delegation of responsibility to perform non-policy, ministerial tasks, a delegation which the Court cannot read the 27th amendment to prohibit.

### E. *Conclusion*

Plaintiffs have asked the Court to address two narrow provisions of the Ethics Reform Act, while ignoring the crucial interrelation between these provisions and the rest of the Act. Such an approach would work a great disservice to the painstaking and conscientious work Congress and the President put into developing this legislation.

The Court finds that the Ethics Reform Act of 1989 was as salutary a piece of government legislation as any enacted in modern times. Those members of Congress and such outside groups as Common Cause that devised the legislation must certainly be commended for eliminating the deleterious "off the books" system of compensation, for providing that our lawmakers be paid a modest living wage and for including in the system a provision that keeps Congress' pay up to date. What members of Congress must now do is to withstand the onslaught of those who would undermine this worthwhile legislation by unfairly and often times deceitfully criticizing those who supported and passed the legislation. There comes a time when citizens must reject demagogues and not always view everything their elected representatives do in a cynical way.

What those who passed the Ethics Reform Act did was to insure as best they could that the citizenry would get honest legislators, not for purchase by any special interest group. To abandon the system created by the Act would rebroadcast the message that our legislators are for sale to the highest bidder. This would invite the return of an intolerable situation, and would represent a traumatic set back for all those fighting for good government.

Fortunately, the Constitution of the United States does not command such a result. The Ethics Reform Act of 1989 is excellent legislation. Congress should stand tall in its continued support of its principles and objectives and not be demogogued to repeal it. The increase in question—3.2% or roughly $4100 annually—is a small price to pay for good honest government and for preventing reversion to a system of special interest payoffs.

What this Court holds is that the Ethics Reform Act of 1989, in providing a methodology for automatic annual adjustments to Congressional salaries meets both the language and the spirit of the 27th amendment. Since a Congressional election has intervened between the passage of the Act and its implementation, the 27th amendment will not be offended, so long as the methodology prescribed by Congress is followed.

While the Court cannot foresee that any pay raises resulting from the quadrennial review process will violate the constitution, so long as the procedures set out in the Ethics Reform Act are followed, a definitive ruling on this issue will have to await the particular pay-setting event, to determine whether the statute has been fully complied with.

### ORDER

By agreement of all parties, a decision on the merits of this case has been consolidated with a ruling on the preliminary relief sought by plaintiffs. Upon consideration of plaintiffs' Motion for Preliminary Injunction, Defendants' and amicus curiae's oppositions thereto, and all other papers filed in this case, and after hearing oral argument from all parties involved, for the reasons stated in the foregoing opinion, it is hereby

ORDERED that plaintiffs' motion is denied and summary judgment is granted in favor of defendants.